Bergan, J.
 

 These are two class actions brought by purchasers under retail sales contracts for recovery of the penalty prescribed by section 414 of the Personal Property Law for a willful violation of the Retail Installment Sales Act (Personal Property Law, art. 10). The violation claimed is that the type on certain printed parts of the installment contracts was less than 8 point in size (§ 402).
 

 Plaintiff Hall and plaintiffs Russell allege they entered into different retail installment contracts for the purchase of carpeting with different sellers and that material parts of the written contracts
 
 ‘ ‘
 
 were printed in type smaller than eight-point ’ ’. Bach seeks the recovery of the “ amount of the credit service charge ”
 
 *400
 
 which, measures the statutory penalty (Personal Property Law, § 414, subcl. 2).
 

 The pleadings are quite indefinite about the “ class ” for which the actions are maintained. The court is not told anything about the class or even, as a fact, that it exists. The Hall action is described as being brought by plaintiff for herself ‘ ‘ and all other persons who bought merchandise by entering into retail installment contracts by signing Form ‘ N. Y. — COB 3 — N. Y.’, which contracts were subsequently purchased by the Coburn Corporation of America ’ ’.
 

 There follows the allegation in similar general terms that the
 
 “
 
 question which is the subject of this action ” (i.e., the size of the type)
 
 ‘ ‘
 
 is one of common and general interest to all persons who bought merchandise by entering into retail installment contracts by signing Form ‘ N. Y.—• COB 3 — N. Y. ’, which contracts were subsequently purchased by the Coburn Corporation of America ’ ’. The Bussell pleading is identical.
 

 To permit the maintenance of a class action by one contracting party on behalf of others who made different contracts solely because of a similarity in form of the instrument of contract would enlarge greatly the scope of the New York class action permitted by CPLB 1005 (subd. [a]) as it, and its identical predecessor, section 195 of the Civil Practice Act, have been construed by this court.
 

 One thing seems clear from these decisions: that there must be more of a common interest than the fact that a number of persons made a number of quite different and unrelated contracts with a number of different and unrelated sellers using the same written form which is claimed to be illegal. This does not become a common question because the same finance company is the assignee of the contracts and prepared them for use by the contracting parties.
 

 The principle was stated by Judge Lehman in Society.
 
 Milion Athena
 
 v.
 
 National Bank of Greece
 
 (281 N. Y. 282, 292): “ Separate wrongs to separate persons, though committed by similar means and even pursuant to a single plan, do not alone create a common or general interest in those who are wronged.” This language was quoted with approval by Judge Fold in 1965 in
 
 Gaynor
 
 v.
 
 Rockefeller
 
 (15 N Y 2d 120, 129) and by Judge Stevens in his dissent in
 
 Onofrio
 
 v.
 
 Playboy Club of N. Y.
 
 (20 AD 2d 3, 7),
 
 *401
 
 a dissent which was expressly made the basis of decision by this court (15 N Y 2d 740, 741).
 

 There is some inconsistency in the cases in this court, but an overall appraisal of them would suggest that a basis for class action is not stated in these complaints. Mr. Uviller in his brief for the Bar Association as
 
 amicus
 
 observes that the cases in this court “ seem to defy explanation in terms of a single principle ” although he suggests that their most ‘ consistent requirement ’ ’ seems to be the allegation of identical facts as the basis for recovery.
 

 But “identical facts” were pleaded in
 
 Onofrio
 
 v.
 
 Playboy Club of N. Y.
 
 where all the other club members were in the same legal position as the plaintiffs Onofrio et al. 1 ‘ Suing on Behalf of Themselves and All Other Members of Playboy Club of New York, Inc.” (15 N Y 2d 740,
 
 supra).
 
 This was true also of
 
 Gay-nor
 
 v.
 
 Rockefeller
 
 where the discrimination alleged affected what Judge Puno described as
 
 “
 
 all other members of the indeterminate class of * * * citizens who may have been the victims ’ ’ of discrimination (15 N Y 2d 120, 129,
 
 supra).
 

 The present cases are similar to
 
 Coolidge
 
 v.
 
 Kaskel
 
 (16 N Y 2d 559). It was there alleged that a prospectus sent to purchasers of stock in a co-operative building violated a statute. The dissent of Judge Burke clearly points up the issue and suggests in that case a much stronger basis for a class suit than the present ones.
 

 The principle laid down in
 
 Boutonv. Van Burén
 
 (229‘N. Y. 17), which involved the right of the owner of a brokerage account on margin to sue for accounting on behalf of herself and other owners of accounts based on improper practices of the broker, has been consistently followed (cf.
 
 Brenner
 
 v.
 
 Title Guar. & Trust Co.,
 
 276 N. Y. 230).
 

 The broadest support for the right to bring a class action seems to be
 
 Kovarsky
 
 v.
 
 Brooklyn Union Gas Co.
 
 (279 N. Y. 304) decided in 1938. The gas company had been making a small, but illegal, charge for turning on gas after temporary discontinuance of service. Plaintiff sued on behalf of himself and other consumers similarly situated.
 

 It was held he could maintain a representative action insofar as it sought injunction and declaratory judgment since this (especially the declaration) could affect all consumers of the gas com
 
 *402
 
 pany whose gas was turned off and on, but that plaintiff could not. in any event maintain a representative action for an accounting of the charges that might have been paid (p. 314).
 

 There is a rational nexus between consumers serviced by the same utility, but whatever might be said of that common interest the tendency of the cases which followed
 
 Kovarshy {supra)
 
 is to restrict, rather than enlarge, the scope of class action.
 

 The real sanction accorded by this court to class suits has been in the closely associated relationships growing out of trust, partnership or joint venture, and ownership of corporate stock (see, e.g.,
 
 Lichtyger v. Franchard Corp.,
 
 18 N Y 2d 528;
 
 Leibert
 
 v.
 
 Clapp,
 
 13 N Y 2d 313;
 
 Case
 
 v.
 
 Indian Motorcycle Co.,
 
 300 N. Y. 513).
 

 Since the weight of authority seems to interdict these actions, the question is whether the court should now revise the rule it has laid down to permit class suits in this situation. It is submitted that the poor are victimized by this type of credit practice; that public authority is impotent to help them; and only, by permitting self-help class actions initiated by private individuals and their lawyers can the imbalance be redressed.
 

 The real injustice, of course, is the fact the poor have to pay more for carpets and for everything else they buy on credit than people who are able to pay outright. Mr. and Mrs. Bussell, for example, paid $736.92 for a $549.02 carpet for their living room and bedroom. Mrs. Hall paid $826.56 for a $580 carpet. But this was not due to the small type of which plaintiffs complain. It was due to the addition of charges which are expressly permitted by statute law.
 

 The lawful credit service charges are all spelled out in section 404 of the Personal Property Law and were complied with in these purchases. There was nothing small about the figures which were written in. They were large enough for anyone to see and are boldly framed. Added to the $609 of Mrs. Hall’s contract, which included sales tax on the basic $580, are $10.01 for credit life insurance, $23.82 for property insurance and $183.73 for “ credit service charge ”. It is not suggested any of this is illegal, but it adds about 40% to the cost of her purchase. The Bussell contract contains similar components.
 

 If this is unfair, as it seems to be, the statute should be changed either to prohibit sales of this type or to reduce the
 
 *403
 
 legally permissible charges. On this essentially economic problem it is doubtful if any public good can be accomplished by making a finance company pay back legally permissible credit charges in an indefinite number of contracts because the type is too small on printed parts of the contract.
 

 The small type of which plaintiffs complain was not concerned with the terms of the contract of sale itself. In large part it dealt with the remedies by repossession and recovery if the purchaser did not pay for the goods.
 

 That a seller can get his goods back if they are not paid for is a common understanding and expectation of those who buy on credit. The terms of credit and protective insurance were also in small type, but the cost of the insurance items was boldly stated in writing next to printed references of sufficient size.
 

 If the type were as large as the printer’s font affords it would not make the slightest difference in the execution of these costly contracts by people who need goods but are unable to pay for them. The essential thing for a purchaser to be able to see in this contract is the exact amounts which make up the price and what has to be paid. These things are certainly stated in bold writing.
 

 The public value of judicial sanction to this kind of class action which would harass a finance company underwriting credit sales without addressing itself to the real evil of retail credit buying is open to substantial doubt. The basic public problem is the heavy cost of credit to consumers.
 

 The size of the contract type, although a technicality prescribed by statute, is still a technicality which does not reach the base of the problem.
 

 Both congressional committees and the American Bar Association acting for the legal profession have been concerned with means of protecting consumers against fraudulent, deceptive or unfair trade practices.
 

 Limitations on, or alternatives to, class actions have been considered as, for example, requiring a predetermination of unfair practice by a public agency or a court at suit of a public agency, before a class action might be instituted. Another alternative is a requirement that actions for recovery be maintained by the public agency itself.
 

 
 *404
 
 These limitations would tend to answer the main objection to the privately maintained consumer class action: that without adequate public control they may become instruments of harassment benefiting largely persons who activate the litigation.
 

 No significant public benefit is discernible from the acceptance of these present class actions which do not, on the merits asserted, justify present departure from the existing New York rule. The Legislature in the spring of 1970 created the State Consumer Protection Bbard, the public function of which will be to protect consumers from unfair practices. (L. 1970, ch. 294.)
 

 Besides this there has previously been adequate public authority in New York to see to it that the requirement of law as to the size of type on contracts be followed and enforcement need not rest on privately instituted actions for the public benefit.
 

 The Banking Department may control the form of defendant’s contracts and make appropriate directions as to the size of type. Besides this, the violation of the statute is a misdemeanor (Personal Property Law, § 414) and the Attorney-General may institute a prosecution based on small type.
 

 The orders should be affirmed, without costs.
 

 Chief Judge Fuld and Judges Burke, Soileppi, Breitel, Jasen and Gibson concur.
 

 Orders affirmed.