268 So.2d 738

Beatrice **TAYLOR**, individually and also on behalf of and for the use and benefit of all other persons similarly situated

v.

**MAJOR FINANCE COMPANY, INC.**, a corporation, et al.

6 Div. 899.

Supreme Court of Alabama.

Sept. 14, 1972.

Rehearing Denied Nov. 9, 1972.

Maddox, J., filed specially concurring opinion on denial of application for rehearing.

Harry B. Cohen, Birmingham, for appellant.

Sirote, Permutt, Friend & Friedman and William G. West, Jr., Birmingham, for Major Finance Co., Inc., a corp., Controlled Management Services, Inc., a corp., J. D. Thornbrough, also known as John D. Thornbrough, J. Roberts, Jeffco Finance and Discount Co., Inc., a corp., Louis Tortorigi, and John Cater, separately and severally.

Wingo, Bibb, Foster, Conwell & Strickland, Birmingham, for Shelby Finance Co., Inc., H. D. Ruffin, Jr., H. B. Thompson, Vulcan Loan and Discount Co., Inc., and C. F. Flemming.

George I. Case, Jr., Birmingham, for New Finance Co., Inc., Michael O'Dell, Ann J. Mordecai, I. S. O'Dell, Ala., State Finance Co., Inc., and Dean Schroeder.

Maurice F. Bishop and Donald B. Sweeney, Jr., of Bishop & Carlton, Birmingham, for Mutual Finance Corp. of Fourth Avenue, a corp.

Lee E. Bains, Bessemer, for Dixie Smith Finance Corp., d/b/a Bel-Air Finance Co., Bel-Air Finance Co., Inc., a corp., H. Eugene Smith, Jr., also known as H. E. Smith, Jr., also known as Gene Smith, Jr., H. Eugene Smith, Sr., also known as H. E. Smith, Sr., also known as Gene Smith, Sr., Dixie Smith, E. S. Lindsey, Bessemer Finance Co., Inc., Bessemer Finance Co., R. E. Justice, also known as Robert Justice.

MADDOX, Justice.

Appellant-complainant, Beatrice Taylor, filed a class action against Major Finance Company and numerous other companies and individuals engaged in the business of making small loans [27 separate companies and individuals] alleging that the respondents charged usurious interest on loans made to her and the members of the class of borrowers she represented and wrongfully induced the class to execute contracts, notes, and mortgages to secure payment of said unlawful loans. The bill also alleged that the respondents, by using harsh collection tactics and coercing the borrowers to renew their loans, were committing acts constituting both a public and private nuisance.

Various respondents filed responsive pleadings to the bill as amended, labelling them either "motions to dismiss" or "motions to strike" or "demurrer." The majority of these responsive pleadings were addressed to the bill as a whole; a few were addressed to specific aspects of the bill. On November 9, 1970, the trial judge issued what was styled as a "final decree" whereby: (1) the separate and several demurrers of the separate and several respondents were separately and severally sustained, (2) the cause was dismissed *without prejudice* to Beatrice Taylor, (3) the costs of the action were taxed to the complainant, Beatrice Taylor.

Complainant, individually and on behalf of all other people similarly situated, then filed an application for rehearing on December 8, 1970. On March 26, 1971, she filed a motion to set aside the final decree and for a severance. On March 26, 1971, the trial judge entered an "order" whereby the "application for rehearing" and the "motion to set aside final decree and for a severance" were denied. The appellant-complainant then took an appeal from the

decrees rendered on November 9, 1970 and March 26, 1971.

■ The first question presented is whether the decree entered on November 9, 1970 was a "final decree." The question whether a decree is final, so as to support an appeal therefrom, is a jurisdictional one and it is the duty of the court, where it is determined that a decree is not final, to dismiss the appeal on its own motion. Wood v. Finney, 207 Ala. 160, 92 So. 264 (1922); Bentley v. Knox, 258 Ala. 377, 62 So.2d 921 (1953).[1]

The "final decree" of November 9, 1970, sustained demurrers of the separate respondents "separately and severally", "without prejudice to the individually named complainant, Beatrice Taylor, to the filing of a proper action in law or in equity."

■ Tit. 7, § 754, Code, 1940, (Recompiled, 1958) requires a final judgment to support an appeal. Tit. 7, § 755, Code, as amended, provides:

"No appeal lies from any decree rendered in equity cases sustaining or overruling a demurrer to a bill in equity, or to a cross-bill. Either party may seek a dismissal of the cause where the demurrer is sustained and no amendment to the bill is made during the time allowed by the court, and the complainant may appeal from the final decree of dismissal; but nothing in this section shall prevent an assignment of errors on such decrees on appeals taken on the final determination of the cause."

There must be a "final decree of dismissal," and a decree dismissing a bill "without prejudice" is not a "final decree of dismissal." Burger In A Hurry, Inc. v. Green Grove, Inc., 280 Ala. 341, 194 So.2d 90 (1967); Vacalis v. Lowry, 279 Ala. 264, 184 So.2d 345 (1966). This court, in *Vacalis*, supra, commented on the purpose of

Act No. 72, approved September 15, 1961, which amended Tit. 7, § 755, as follows:

"We think it clear that one of the purposes of the Legislature in enacting Act 72, supra, was to prevent complainants in equity cases from having this court pass on decrees of the trial courts sustaining demurrers to bills in equity until the cause was finally disposed of in the trial court. In our opinion a decree dismissing a bill without prejudice is not a 'final decree of dismissal' as those words are used in Act 72, supra. A final decree puts an end to all controversies litigated or which ought to have been litigated within the power and duty of the parties in respects to the particular controversy. Tilley's Alabama Equity, § 170, pp. 180–181."

■ The decree of November 9 sustaining the demurrers and dismissing the case "without prejudice" is not a final, appealable decree in that Beatrice Taylor is not precluded, by such decree, from refiling the same suit in law or equity.

We note that the decree dismissing the cause of action without prejudice insofar as complainant's right to maintain an *individual* action in law or equity does not address itself to the question of complainant's right to maintain a *class action*. Assuming that the decree of the trial court was "final" insofar as complainant's right to maintain a class action was concerned, the trial court did not err.

■ Appellant, in her motion to set aside, argues that the decree entered November 9, 1970 is actually "with prejudice" in that Act No. 374, Acts of Alabama, 1959, pp. 966, 979 (Tit. 5, § 290(8), which provides for a cause of action under the Alabama Small Loan Act, specifies that the cause of action must be commenced within one year of the date of the last payment on the loan agreement. Appellant argues that the one year statute of limita-

1. We point out that all appellees represented by counsel have filed motions to dismiss the appeal on the ground that the decrees were not "final."

tion has run so that the dismissal "without prejudice" is actually "with prejudice." The amended bill of complaint contains no allegations showing that one year has lapsed from the time of last payment on the loans secured by the complainant. Consequently, there is nothing in the record to show that the decree of dismissal "without prejudice" was actually "with prejudice" due to the tolling of the one year statute of limitation for bringing a usury cause of action. Absent a "final decree of dismissal with prejudice," the decree entered November 9, 1970 is not appealable. *Burger In A Hurry* and *Vacalis,* supra.

■ We next consider whether the order of the circuit court rendered March 26, 1971, is final and, therefore, appealable. This order denied the appellant's application for rehearing and motion to set aside the final decree. An order or decree denying an application for rehearing will not support an appeal unless the denial modifies the final decree. Reames v. Holman, 283 Ala. 582, 219 So.2d 632 (1969), and Williams v. Evans, 286 Ala. 20, 236 So.2d 680 (1970). Here the order simply denied the application for rehearing without modifying the final decree so that it is not reviewable on appeal. Equity Rule 62. There is no difference between a motion to set aside a dismissal of a cause and a motion for a rehearing in said cause. The same rules apply. Board of Registrars of Russell County v. Mathews, 274 Ala. 73, 145 So.2d 799 (1962). Since the denial of the motion to set aside the decree in no way modified the decree, the decree of denial was not appealable. Equity Rule 62; Board of Registrars of Russell County v. Mathews, supra.

■ The order of March 26, 1971, in addition to denying the appellant's application for rehearing and motion to set aside, denied the appellant's motion to sever wherein Beatrice Taylor sought permission of the court to sue, individually and on be-

half of the class, each respondent loan company and their owners separately.

As we have pointed out above, the decree of November 9, 1970 was not a final decree. The order of the trial court denying the motion for a severance was not a final decree. As we view the state of the record, the complainant filed a class action against several respondents. The trial court sustained demurrers and on November 9, 1970 dismissed the bill without prejudice to the complainant's filing an *individual* action in law or equity. No request was made for permission to amend in view of the action of the court on the demurrers. It was on March 10, 1971 when she first alleged, in an *amended* motion for rehearing, that the dismissal of the complaint failed to accord her the right to amend. The motion for severance affirmatively shows that complainant still wished to maintain a *class action.* As we have already pointed out, the court did not err in this respect.

Upon consideration of the two decrees appealed from, we determine neither to be final. The appeal is due to be dismissed.

Appeal dismissed.

HEFLIN, C. J., and MERRILL, HARWOOD and SOMERVILLE, JJ., concur.

## ON REHEARING

Application for rehearing overruled.

MADDOX, Justice (concurring specially).

I agree that the application for rehearing should be overruled, but hereby express some personal views.

On original deliverance, this Court said:

"Assuming that the decree of the trial court (of November 9, 1970) was 'final' insofar as complainant's right to maintain a class action was concerned, the trial court did not err."

On application for rehearing, the appellant asks why this ruling was made, and requests that the statement be deleted from the opinion, or that we set out our reasons for arriving at the conclusion. I hereby state my reasons.

I am quite aware of the increased emphasis which has recently been placed upon consumer protection by both the federal and state governments, with special attention being given to the area involving consumer credit. The thrust of consumer advocates during the past decade has been primarily to seek passage of legislation, both at the federal and state level. Unquestionably, these efforts have been productive, with legislation being passed to require lending institutions to make certain disclosures regarding interest rates, to establish minimal safety standards for automobiles and other products, and to eliminate or reduce confusing packaging or misleading advertising. Many of these laws provide for executive enforcement by giving various bureaus the right to regulate and secure compliance with the law and in many cases a public agency is given the right to seek declaratory and injunctive relief against illegal practices. A variety of new sanctions and enforcement procedures have been and are being considered.

The class action—sometimes called the darling of those who represent the masses of indigent and discriminated persons—has received attention in the consumer credit field as being the appropriate device to close the shops of the loan sharks and stimulate the best creditors to remain the best creditors.

The question, as I view it, is as follows:

Can individual plaintiffs maintain a class action to recover damages, penalties and attorneys' fees, authorized under the Alabama Small Loans Act, not only for themselves but for all those similarly situated?

This is a new question in this state, and I would not be so heroic as to state that I could categorically and globally answer the question in the negative for all time. However, I do believe that I can safely say that under present law, this plaintiff should not be permitted to maintain a class action under the facts of this case.

Consumer class actions properly brought and properly administered can be effective instruments for bringing about social change. We all know the sweeping changes—good or bad, depending on your point of view—which have occurred as a result of class actions brought to rearrange school attendance areas, the apportionment of state legislatures, and literally thousands of other cases where violations of civil rights or employment rights were alleged.

Some professors and other consumer advocate groups are convinced that the class action is an appropriate vehicle for the private enforcement of consumer credit legislation.[1] However, both state and federal courts, where test cases were filed, have decided that the class action may be an unavailable remedy for the private litigant if he is seeking to recover damages or a penalty as provided for by state or federal consumer credit legislation. Ratner v. Chemical Bank New York Trust Co. (D.C., N.Y., 1972), 54 F.R.D. 412; Rogers v. Coburn Finance Corp. of DeKalb (D.C., Ga., 1972), 54 F.R.D. 417; Hall v. Coburn Corp. of America, 26 N.Y.2d 396, 311 N.Y.S.2d 281, 259 N.E.2d 720 (1970). While the result reached in *Hall* has been criticized as being "unduly rigid" and the result reached "would be untenable under Federal Rule 23,"[2] Judge Marvin Frankel,

---

1. See Private Enforcement of Consumer Credit Legislation, Dole, 26 Bus.Law. 915; The Consumer Class Action, Travers and Landers, 18 Kan.L.Rev. 811; The Consumer Class Action—Part II, Considerations of Procedure, Starrs, 49 Bost.U.L.Rev. 407; Consumer Class Actions Under Recent Consumer Credit Legislation, Dole, 44 N.Y.U.L.Rev. 80.

2. Dole, Private Enforcement of Consumer Credit Legislation, 26 Bus.Law. 915 (1971).

a leading proponent of Rule 23, (see Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39) denied class action treatment under Federal Rule 23 in *Ratner,* a truth-in-lending case quite similar in nature to Hall.[3]

Most of the writers of the legal articles mentioned in footnote 1 seem to concede that there are difficulties in allowing a class action to recover a penalty. They point out, but do not necessarily agree, that to permit a class suit in such situations could result in bankrupting the defendant while overcompensating the consumer class.[4] Professors Travers and Landers, in their law review article entitled "The Consumer Class Action," 18 U. of Kan.Law Rev. 811, 835, note:

> "On the other hand, class actions appear inappropriate in some cases. The large group with small individual damages creates management problems of severe proportions and also raises the spectre of litigation designed to benefit lawyers alone or to punish the defendant —a purpose more easily carried out by means other than class actions."

One writer has classified Alabama's decisions under our class action rules as "useful but unenlightening in the quest for a consumer class action." Starrs, The Consumer Class Action, 49 Bost.U.L.Rev. 407, 472. Without agreeing with the writer, I can say that he is probably correct. Like Judge Frankel said in *Ratner,* this venture is "into largely unexplored terrain." 54 F.R.D. 413. I am not familiar with any occasion when this court has discussed the question of a consumer class action, especially one seeking recovery of a penalty.

I reach the result here primarily because of the history of consumer credit protection in this state. The public policy of this state condemns usurious contracts as tainted with an evil intent and offensive to the policy and positive mandate of the law, which policy is supported by Divine Authority, Exodus, Ch. 22, v. 25, and the common law. Larson v. State ex rel. Patterson, 266 Ala. 589, 97 So.2d 776 (1957) where we upheld the right of *public* enforcement of the law by use of the injunctive process. Two years after *Larson,* the legislature passed the Alabama Small Loan Act. Acts of Alabama, 1959, p. 966; Title 5, § 277, et seq. Code, 1940, Recomp.1958. Without attempting to spell out the various provisions of the Act, it gave the Executive broad powers to regulate the making of small loans, and provided penalties for the violation of the Act by money lenders.

The Act allows a borrower to recover the full amount of principal and charges paid by him on any contract made in violation of certain provisions of the Act. Section 14(8) of the Act [Title 5, § 290(8)] provides:

> " * * * If any amount in excess of the charges permitted by this article is charged, contracted for, or received, except as the result of an accidental and bona fide error of computation, the contract of loan shall be void and the licen-

3. Hall was considered a test case under New York state law. See Personal Finance Law, Quarterly Report, Vol. 24, No. 1, Winter, 1969, p. 34.

4. Some judges agree that such fears held by opponents of the class suit are not imaginary. In the recent case of Shields v. Valley National Bank of Arizona, U.S. D.C., Ariz., 56 F.D.R. 448, 1972, it was stated in part:
"At a time when large business firms in general appear to be a scapegoat for a great many of our Nation's problems, the Courts should not gratuitously add the final straw. The Truth-in-Lending Act has laudible purposes and should be strictly enforced by the Courts, but it should not be allowed to be used as means of oppression or harassment or unjust enrichment. An interpretation of the Act to allow actions, such as sought by Mr. Shields, could be the means of curing an illness by killing the patient and in the process promoting unnecessary litigation mainly for the benefit of a few lawyers ready and willing to promote such cases."

see shall have no right to collect or receive any cash advanced, charges or recompense whatsoever; and the licensee and the several members, officers, directors, agents and employees thereof who shall have participated in such violation, shall be guilty of a misdemeanor and upon conviction thereof shall be punishable by a fine of not more than five hundred dollars ($500) and not less than one hundred dollars ($100) or by imprisonment of not more than six months, or by both such fine and imprisonment, in the discretion of the court. Any borrower may recover the full amount of principal and charges paid by him on any contract made in violation of this section, together with a reasonable attorney fee, by action at law or in equity brought within twelve months from the date of the last payment of principal or charges on such contract."

Like the federal Consumer Credit Protection Act [15 U.S.C. § 1640 (Supp. IV 1968)] and the Uniform Consumer Credit Code, or U.C.C.C. [§ 5.203], the Alabama Small Loan Act has no provision which specifically authorizes consumer class actions to recover the penalties allowed by

Section 14(8) of the Act.[5] While I do not concede that statutory authorization to bring class suits for statutory penalties under consumer credit laws is absolutely and always necessary, since we are primarily dealing with a procedural device for processing claims, I do think that there is a substantial question of substantive policy involved in actions for recovery of damages or penalties under consumer credit laws which can best be dealt with by the legislature which enacts consumer credit laws and the executive department which already has broad regulatory power to protect the public interest in the field of consumer credit.[6]

I am aware that the various jurisdictions do not agree completely on the rules to be followed in determining whether a consumer class suit should be allowed.[7] In most instances the generally accepted rule seems to be to handle each case on an ad hoc basis, giving the trial court some discretion. But in the area of consumer credit, I believe almost all courts, state and federal, do not permit a class suit by a plaintiff seeking to recover a penalty for himself and others similarly situated.

5. By way of contrast, the National Consumer Code, a model code drafted and proposed by the National Consumer Law Center, an OEO-funded organization located at Boston College Law School, makes specific authorization for a class action to recover such penalties. I know of no state which has adopted this model code, however. The Senate Commerce Committee, chaired by Senator Warren G. Magnuson, has launched a massive survey of reported and unreported class actions in federal and state courts. The Committee's objective is to prepare a cost-benefit analysis comparing the relative efficiency of class actions as against individual adjudications. The survey apparently will be designed to cover not only consumer credit litigation but also actions involving antitrust, securities, civil rights, welfare and other areas. This study may be beneficial to the Congress and state legislatures in determining whether to make specific provision for private enforcement of the penalty sections of consumer credit laws.

6. Because of my belief that the question involves substantive policy, I am not convinced that this Court could adopt a rule to allow such consumer class actions under the rule-making power conferred upon us by Act No. 1311, Acts of Alabama, 1971; Tit. 13, § 17(2), Code, 1940, Recomp.1958. I am convinced present Equity Rule 31 does not authorize such a consumer class action.

7. In Katz v. Carte Blanche Corp., 53 F.R.D. 539 (1971), the District Court for the Western District of Pennsylvania held that a class action was manageable consisting of approximately 600,000 members. Nevertheless, the court required the plaintiff, at his costs, to send notices to each member of the class to determine whether they wished to join the class. It is possible that a sufficient number would vote not to participate to cause the court to reconsider its position on allowing the class action.

As I indicated earlier, the law on this subject is definitely in the formative stage. Based on available persuasive precedent, I am convinced that the class suit should not be allowed. If the precedents which I follow are overturned, or if changed conditions should present a clear case of economic necessity and paramount convenience, and we could prevent a failure of justice by permitting a class suit, I would readily agree that a class suit would be permissible. I find no such necessity or paramount convenience at this time, as presented by the pleadings in this case.