**ALABAMA OPTOMETRIC ASSOCIA-
TION et al., Plaintiffs,**

v.

**The ALABAMA STATE BOARD OF
HEALTH et al., Defendants.**

**Civ. A. No. 74-120-N.**

United States District Court,
M. D. Alabama, N. D.

July 26, 1974.

Robert D. Segall, Hobbs, Copeland, Franco & Screws, Montgomery, Ala., for plaintiffs.

Champ Lyons, Jr. and Herman H. Hamilton, Jr., Montgomery, Ala., for State Board of Health; Robinson; Chenault; Burleson; Bush; Crowe, Grote; Hamrick; Hutchinson; Lightcap; Nelson; Strandell; White; and Yohn [Also James T. Pons, Asst. Atty. Gen. of Ala., Montgomery, Ala., is co-counsel for these Defendants].

John T. Mooresmith, Gen. Counsel, James J. Carter, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for Medical Ass'n of State of Alabama.

## ORDER

VARNER, District Judge.

This cause is now submitted upon the Defendants' various motions to dismiss; on the Plaintiffs' motion for leave to amend the complaint filed herein May 22, 1974; and on the Plaintiffs' motion to dismiss their fourth cause of action without prejudice filed herein June 7, 1974.

By agreement of the parties, the Plaintiffs Grice and Glober and the class they represent will be dismissed from causes of action No. 1, 2 and 3. By agreement of the parties, Plaintiffs Bingham, Crosby and Himburg and the class they represent will be dismissed from cause of action No. 5.

The Plaintiffs' motion to dismiss the fourth cause of action without prejudice and Plaintiffs' motion for leave to amend the complaint will be granted.

The Defendants collectively attack the substantive validity of the first cause of action, which alleges a violation of the federal antitrust laws, 15 U.S.C. § 1 et seq. Specifically, the Defendants contend that the cause does not allege an interference with "trade or commerce" within the meaning of the Sherman Anti-Trust Act. In support of this contention, Defendants cite Goldfarb v. Virginia State Bar, 497 F.2d 1, (4th Cir., 1974), which concludes that the legal profession is not engaged in "trade or commerce" within the meaning of the Sherman Act. Analogy is drawn from the *Goldfarb* case to the present case dealing with a variety of eye care services. Defendants argue that the learned practice of eye examination is as a matter of law not "trade or commerce".

The Plaintiffs contend that we are dealing, not with a confined area of medical services, but with a "multi-faceted federal health program" involving numerous services and that, while the Supreme Court failed to decide whether or not the practice of medicine involves "trade or commerce" in United States v. Oregon State Medical Society, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1958), it has decided that a "group health" service of a nature similar to that in question does involve "trade or commerce", American Medical Association v. United States, 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434.

■■ This Court is of the opinion that the heart of this case lies in the effect of the medicare-medicaid program which is national and, therefore, interstate in its scope. Additionally, the optometrists in question are, allegedly, engaged in the sale and distribution of eye wear, and as retailers, they are involved in "trade or commerce" within the meaning of the Sherman Act. Trade as used in the antitrust laws denotes "the purchase or barter and sale of goods, wares and merchandise, either at wholesale or retail." United States v. Debs, 7 Cir., 64 Fed. 724; Vol. I, Toulmin's Antitrust Laws, § 6.5 (1949).

■ The Defendants point out that the complaint fails to properly allege in the first cause of action that the Defendants' acts caused an unreasonable restraint on interstate commerce. This fallacy has been corrected by amendment. The parties agree that the allegations of interstate commerce involvement are not subject to attack by motion to dismiss and that evidence must be elicited before a determination as to the sufficiency of the allegations can be made. Therefore, it appears that the substantive antitrust allegations support a claim for relief.

■ The Defendants attack each and every cause of action on the ground that the Plaintiffs allegedly failed to file this suit within the time allowed by the statute of limitations. The acts complained of, however, allegedly began some years ago and are continuing in nature. The statute of limitations does not act as a bar to this lawsuit. 54 C.J.S. Limitation of Actions § 169. Whether or not limitations may be a defense against certain damages remains to be determined.

■ The Defendant Medical Association moves for dismissal for failure

1336

to state a claim against it. The gravamen of Counts I and II of the complaint is that the Medical Association and others conspired in a scheme to deprive the Plaintiffs of their rights to provide or to participate in medical benefits available under medicaid. A corporation may be guilty of conspiracy, and the guilty intent of corporate officers may be imputed to the corporation to prove its guilt. Mininsohn v. United States, 3 Cir., 101 F.2d 477; Joplin Mercantile Co. v. United States, 8 Cir., 213 F. 926, affm'd. 236 U.S. 531, 35 S.Ct. 291, 59 L. Ed. 705. The first and second causes of action alleging conspiracy by the Medical Association to violate federal antitrust laws and in violation of State monopoly statutes do state claims against the Medical Association. The Plaintiffs agree that the third cause of action, alleging violation of Code of Alabama, Title 49, § 32(8), does not state a claim against the Medical Association or its Board of Censors and should be dismissed as to them. The fifth and sixth causes of action, alleging violation of the Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983, will be dismissed as to the Medical Association. A corporation is not a "person" within the meaning of 42 U.S.C. § 1983. Booth v. General Dynamics Corp., 264 F.Supp. 465 (D.C. 1967); Sellers v. Regents of the University of California, a corp., 432 F.2d 493 (9 Cir., 1970); Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L. Ed.2d 596. For the same reason, the Defendants Board of Health and Board of Censors, not being persons as such, should be dismissed as Defendants as to the fifth and sixth causes of action.

The individual members of the Board of Censors of the Medical Association in their official capacity move for dismissal in their official capacity on the ground that the complaint fails to state a claim upon which relief may be granted. While it may be that the burden of proof will be quite difficult to meet [1], the complaint should not be dismissed unless it appears beyond doubt that the Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L. Ed.2d 80. This ground for motion to dismiss is not available. Each cause of action states a claim upon which the Plaintiffs are entitled to offer proof.

The Defendants move to dismiss the Alabama Optometric Association as a party Plaintiff on the ground that any rights asserted by said Plaintiff are merely cumulative of those asserted by the individual Plaintiffs. As a general rule, associations have standing to sue whenever they or their members are injured. Association of Data Processors, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184. The Alabama Optometric Association is an organization of many years standing, which was established to promote, not only the interests of its members, but also the optometric profession generally. In this context, the Alabama Optometric Association represents the interests of prospective optometrists, as well as the interests of its present members, and in this capacity, it has standing to bring this suit.[2]

All of the Defendants, who are officials of the State of Alabama, including the Alabama State Board of Health, have filed motions to dismiss grounded on their official immunity. In considering the official immunity defenses claimed by Defendant officials, it is necessary that the Court examine the na-

1. Indeed, it appears, almost to a certainty, that no Defendant, acting as a member of the Board of Censors, is charged in any count except in conclusory allegations.

2. Defendant's reliance upon the ruling of this Court in Alabama Black Lawyers Ass'n., et al. v. Board of Commissioners of the Alabama State Bar, Civil Action No. 3809–N, is misdirected. Only persons who did not have the complaints set out in that complaint (the blacks admitted to Alabama practice who did not and could not complain that they were denied law licenses) are members of Alabama Black Lawyers Association. Members of the Alabama Optometric Association, however, are the persons here claiming to have been wronged.

ture of the claims made against these Defendants and how the alleged infringements relate to the official duties of the Defendants in the light of general principles of immunity.

No official is here charged with vicarious liability, nor may he be, Moor v. County of Alameda, supra. It must also be remembered that a State may give its consent to be sued. The Supreme Court of Alabama in Aland v. Graham, 287 Ala. 226, 250 So.2d 677, recognized that Alabama has consented to be sued to compel performance by a public official of a public duty, to enjoin enforcement of an unconstitutional law, and to construe or apply statutes or rules by declaratory judgment. As pointed out in Edelman v. Jordan, 415 U.S. 651 at 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974), the mere fact that a State participates in a federal public aid program is not sufficient to establish its consent to be sued in the federal courts. It, therefore, appears that the officials and the State Committee of Public Health are not immune to suit for an injunction or declaratory relief.

Each of the Defendants is charged in Count I with a violation of federal anti-trust laws. While some of the alleged acts complained of appear to be within the scope of the authority of the officials, the parties should have an opportunity to offer evidence thereon as the facts pertinent thereto appear to be in conflict at this stage of the pleadings.

Count II involves an alleged restraint or attempted restraint of the eye care trade and, insofar as the pleadings show, may or may not involve acts within the scope of the official authority of any Defendant.

Count III, in substance, complains that the Defendants set lesser fees for medicaid services by optometrists than for similar services by medical doctors. This setting of fees is allegedly in violation of Code of Alabama, Title 49, § 32(8). The setting of fees is allegedly an administrative function of the Defendant State Board of Public Health, of Defendant Director of Medical Services Administration, and of Defendants who compose the Board of Public Health. Count III, therefore, is a claim against the Board of Health and its administrator and members for acts done within the scope of their authority but in violation of the Alabama State law. Their immunity therefor is discussed herein-otherwise.

The fifth cause of action and the sixth cause of action allege violations of equal protection and due process as protected by 42 U.S.C. § 1983 by virtue of the policies of the State Committee of Public Health having set discriminatory fees for eye examinations and the fitting of glasses by optometrists. The fifth cause is concerned with damages to the prospective consumer from denial of optometrists' services because of the fact that the discriminatory fees cause the optometrists not to participate in medicaid. The sixth cause of action concerns itself with damages to the optometrists themselves and the consumer because of the optometrists' inability to participate in the medicaid program because of the discriminatory fees. As hereinbefore recognized, Defendants, other than individual "persons", are not within the purview of § 1983.

It is alleged that the individual Defendants, the Director of the Medical Services Administration, Defendant Robinson, and the members of the State Committee of Public Health, have violated § 1983 in the deprival of due process and equal protection for the Plaintiffs. All of these Defendants are officials of the State of Alabama and, as such, are entitled to the protection of the Eleventh Amendment and are said to be officially immune to suits for damages arising from their having performed acts within the scope of their official authority. This amendment has long been construed as barring suits by citizens of the Defendant State, as well as suits by citizens of other states. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The rule is especially compli-

cated where it conflicts with a plaintiff's constitutional rights, and it has often been held to yield to superior constitutional rights of a plaintiff. On several occasions the Supreme Court has approached the question of apparent conflicts between the rights provided by § 1983 against a State officer for damages resulting from a violation of the constitutional right of the plaintiff and the Eleventh Amendment giving the States official immunity for acts done within the scope of their authority. In Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed.2d 492, it is said that 42 U.S.C. § 1983 was meant "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of position." The Court in Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 40 L.Ed.2d 90, recently reviewed the history of immunity and reasoned as follows:

> "The Eleventh Amendment to the Constitution of the United States provides: 'The judicial power of the United States shall not be construed to extend to any suit in law and equity, commenced or prosecuted against one of the United States by citizens of another State * * *.' It is well established that the amendment bars suits not only against the State when it is the named party but when it is the party in fact. * * * Its applicability 'is to be determined not by the mere names of titular parties but by the essential nature and effect of the proceedings, as it appears from the entire record.' Ex parte New York, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057.

> "However, since Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1907), it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he deprived another of a federal right under the color of state law. Ex parte Young teaches that when a state officer acts under a state law in a manner violative of the Federal Constitution, he

> 'comes into conflict with the superior authority of that Constitution and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.' 209 U.S., at 159–160, 28 S.Ct. at 454."

> "* * * While it is clear that the doctrine of Ex parte Young is of no aid to a plaintiff seeking damages from the public treasury, (citations omitted) damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office. Myers v. Anderson, 238 U.S. 268 [368], 35 S.Ct. 932, 59 L.Ed. 1349 (1915). See generally Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)."

The Court mentioned that the doctrine of official immunity apparently rested on two mutually dependent rationales:

> "(1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good."

The Court went on to point out that the public interest requires decisions and action to enforce laws for the protection of the public and that:

> "Public officials, * * * who fail to make decisions when they are needed or who do not act to implement decisions when they are made do not fully and faithfully perform the duties of their offices. Implicit in the idea that officials have some immunity—absolute or qualified—for their acts,

is a recognition that they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error and possible injury from such error than not to decide or act at all."

"Since the statute relied on (§ 1983) thus included within its scope the ' "misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." ' Id., at 184, 81 S.Ct., at 482 (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368), government officials, as a class, could not be totally exempt, by virtue of some absolute immunity, from liability under its terms. Indeed, as the Court also indicated in Monroe v. Pape, supra, the legislative history is to the contrary." (Parenthetical expression added)

The *Scheuer* Court quoted from Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, in regard to liability for unconstitutional arrests made by police officers as follows:

" * * * If the jury found that the officers reasonably believed in good faith that the arrest was constitutional, then a verdict for the officers would follow even though the arrest was in fact (without probable cause and) unconstitutional." At 557, 87 S. Ct. at 1219.

The Court in *Scheuer* continued as follows:

"When a Court evaluates police conduct relating to an arrest, its guideline is 'good faith and probable cause.' * * * In the case of high officers of the executive branch, however, the inquiry is far more complex since the range of decisions and choices—whether the formulation of policy, of legislation, of budgets, or of day-to-day decisions—is virtually infinite. In common with police officers, however, officials with a broad range of duties and authority must often act swiftly and firmly at the risk that ac-

tion deferred will be futile or constitute virtual abdication of office. Like legislators and judges, these officers are entitled to rely on traditional sources for the factual information on which they decide and act. * * * In short, since the options which a chief executive and his principal subordinates must consider are far broader and far more subtle than those made by officials with less responsibility, the range of discretion must be comparably broad. * * *

"These considerations suggest that, in varying scope, a qualified immunity is available to officers of the executive branch of government, the variation dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability are sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief, that affords basis for qualified immunity of the executive officers for acts performed in the course of official conduct. * * *

" 'When there is a substantial showing that the exertion of state power has overridden private rights secured by that Constitution, the subject is necessarily one for judicial inquiry and an appropriate proceeding directed against the individuals charged with the transgression. * * * ' "

 It appears to this Court that, under the facts alleged at this point, the Plaintiffs could take the position that some or all of the acts complained of were not done within the scope of the Defendants' official authority or that the individual Defendants charged did the acts complained of in bad faith or without reasonably believing that the acts could be constitutionally done. Assuming these facts to be true, the Plaintiffs may be entitled to recover damages under evidence offered under the plead-

ings of the fifth and sixth causes of action. As said in *Scheuer,* supra:

"This case in its present posture, presents no occasion for definitive exploration of the scope of immunity available to state executive officials nor, because of the absence of a factual record, does it permit a determination as to the applicability of the foregoing principals to the respondents here. . . .

"The complaining parties are entitled to be heard more fully than is possible on a motion to dismiss a complaint."

 This Court concludes that the officeholders of the State of Alabama, as individuals, are absolutely immune from suit for damages under Count 3 by the Eleventh Amendment [3] and are qualifiedly immune from suit for damages under Counts 5 and 6. As said in Scheuer v. Rhodes, supra, the officers are immune from suits for damages for their unconstitutional acts done within the scope of their authority where the officers reasonably believed in good faith that the actions were constitutional. In their official and individual capacities, the officers may be proceeded against in equity to enforce constitutional action or to judicially determine whether or not their official acts were constitutional, Aland v. Graham, supra,

but relief in such actions, as to the officials in their official capacities, must be prospective and not retrospective, Edelman v. Jordan, supra. Such relief is confined to injunctive or declaratory judgment relief and does not include damages against the officer in his official capacity. Damages, however, may be awarded against an officer in his individual capacity under § 1983 (the fifth and sixth causes of action) if the officer violated the constitutional right of the plaintiff without reasonably believing in good faith that the action was constitutional, Scheuer v. Rhodes, supra; Ex parte Young, supra.

 The Board of Health is an arm of the State government and may not be sued for damages, Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389. As heretofore pointed out, the State of Alabama has consented to suits to require its agents to do their duty. It, therefore, appears that the motion of the Board of Health should be granted as to both the equitable aspects of the first, second and third causes of action and as to the damage claims therein.

 The Plaintiffs contend that they have a right to class-action treatment under the Alabama civil anti-monopoly statute.[4] A recovery is therein

3. Plaintiffs strongly contend that Bankers Life & Casualty Co. v. Larson, 257 F.2d 377 (5th CA 1958), rejects the idea that official immunity protects a public official who has allegedly conspired with persons to restrain trade. This Court does not agree. The antitrust laws do not supercede the Eleventh Amendment. The Court in *Bankers Life,* supra, reversed the United States District Court for the Southern Division of Florida on the ground that the District Court inappropriately granted summary judgment in a case which presented a genuine issue of material fact. The Fifth Circuit did not consider whether or not that, if the officials in question did conspire while wearing the cloak of office, they would be immune from suit. The Court simply decided that a question of fact remained under the allegations of the complaint as to whether the conspiracy was committed by the defendant officials in the course of official duties or by the individuals totally separate and apart from

their role as officials. The allegations of Count 3 clearly preclude the possibility that the conspiracy here in question could have been contemplated by the Defendants in any other but their official capacity. In support of the Court's application of the immunity doctrine in this instance is Parker v. Brown, 317 U.S. 341, 350, 63 S.Ct. 307, 87 L.Ed. 315, wherein it is stated that "we find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a State or its officers or agents from activities directed by its Legislature." As heretofore shown, an issue of fact remains whether or not all acts complained of in Counts 1 and 2 were done within the official authority of the individual Defendants.

4. Title 7, § 124, Code of Alabama: "Any person, firm, or corporation injured or damaged by an unlawful trust, combine, or monopoly, or its effect, direct or indirect, may,

authorized for actual damages and, in addition thereto, the sum of $500.00.[5] The Defendants collectively cite two cases for the proposition that it would be unjust to allow a class action for a penalty in that it could bankrupt a defendant and over compensate the class. Taylor v. Major Finance Co., Inc., 289 Ala. 458, 268 So.2d 738; Echols v. Star Loan Co., 290 Ala. 76, 274 So.2d 51. While this Court is impressed with the equities suggested by the Defendants, it cannot agree with them solely on the authorities they have cited. Both the *Taylor* and the *Echols* cases were class actions for alleged violations of the Alabama Small Loan Act.[6] This statute is entirely different from the one involved in the present case. Even though Justice Mattox, in a concurring opinion in *Taylor*, frowned upon class actions for a penalty in the consumer credit field, this concurrence was not accorded recognition in the opinion of the Court or in the later case of *Echols*, supra. Defendants cite no other authority for the proposition that Plaintiffs cannot claim class-action treatment under Title 7, § 124, Code of Alabama, and we find none. The statute must be construed as written. It appears that this aspect of the case will lie only under Rule 23(b)(3), Federal Rules of Civil Procedure, and that such relief will be available only to unnamed members of the class upon notice as required by Rule 23(c)(2). Eisen v. Carlisle, 417 U.S. 156, 94 S.Ct. 2140, 40 L. Ed.2d 732.

Therefore, the Defendants' motion to dismiss this aspect of the second cause of action will be denied with the understanding that each member of the class will have to prove that they were damaged under this statute before they will be entitled to the penalty therein provided.

It is, therefore, Ordered that:

1. Grice and Glober and the class they represent be, and they are hereby, dismissed from the first, second and third causes of action;

2. Bingham, Crosby and Himburg and the class they represent be, and they are hereby, dismissed from the fifth cause of action;

3. The Plaintiffs' motion to dismiss the fourth cause of action without prejudice and the Plaintiffs' motion for leave to amend the complaint in the manner set out be, and they are hereby, granted;

4. The Defendants' motion to dismiss on the ground that the complaint fails to sufficiently allege "trade or commerce" within the meaning of the Sherman Act be, and the same is hereby, denied;

5. The Defendants' motion to dismiss for the Plaintiffs' failure to file this suit within the statute of limitations be, and the same is hereby, denied;

6. The motion to dismiss for failure to state a claim filed herein by Medical Association of the State of Alabama and the Board of Censors be, and the same is hereby, granted as to the third, fifth and sixth causes of action and denied as to the first and second causes of action;

7. The motion to dismiss filed herein by Defendant Board of Health be, and the same is hereby, granted as to the fifth and sixth causes of action;

8. The motion to dismiss by the individual members of the Board of Censors of the Medical Association in their offi-

---

in each instance of such injury or damage, recover the sum of five hundred dollars and all actual damages from any person, firm, or corporation creating, operating, aiding, or abetting such trust, combine, or monopoly; and may maintain the action therefor against any one or more of the parties to the trust, combine, or monopoly, or their attorneys, officers, or agents, who aid or abet such trust, combine, or monopoly. And all such actions may be prosecuted to final judgment or decree against any one or more of the defendants thereto, notwithstanding there may be a dismissal, acquittal, verdict, judgment, or decree in favor of one or more of the defendants."

5. In Nickelson v. Nestles Milk Products Corp., 107 F.2d 17 (5th Cir. 1939), this $500 sum was characterized by the Court as a "penalty".

6. Code of Alabama, Title 5, § 277.

cial capacity be, and the same is hereby, denied;

9. The Defendants' motion to dismiss the Alabama Optometric Association as a party Plaintiff be, and the same is hereby, denied;

10. The Defendant Board of Health's motion to dismiss the first three causes of action be, and the same is hereby, granted;

11. The motions to dismiss filed by the officials of the Board of Health and Paul I. Robinson be, and the same are hereby, granted as to the aspect of Count 3 for damages and denied as to Counts 1, 2, 5 and 6 for damages and as to all causes for equitable relief; and

12. The Defendants' motion to dismiss the class action aspect of the second cause of action claiming a statutory penalty be, and the same is hereby, denied.