Helen **KRISTIANSEN**, for herself and all others similarly situated, Plaintiff,

v.

**JOHN MULLINS & SONS, INC.,**
**Defendant.**
No. 70–C–1041.

United States District Court,
E. D. New York.
March 14, 1973.

Jack Greenberg, Jonathan Shapiro, Eric Schnapper, New York City, for plaintiff.

Pfister & Flood, Brooklyn, Arthur E. Flood, Martin R. Kramer, Brooklyn, of counsel; Corner, Finn, Cuomo & Charles, Brooklyn, John H. Finn, Brooklyn, of counsel, for defendant.

BARTELS, District Judge.

This action is brought under the provisions of the Truth-in-Lending Act ("Act"), 15 U.S.C. § 1601 et seq., Consumer Credit Protection Act of May 29, 1968, 82 Stat. 146, and Federal Reserve Regulation Z (12 C.F.R. § 226) promulgated thereunder, and also pursuant to Article 10, § 401 et seq. of the New York Personal Property Law, McKinney's Consol.Laws, c. 41, under the pendent jurisdiction of this court.

Plaintiff Kristiansen, a credit customer of the defendant Mullins, a retail furniture chain store, undertakes to sue for herself and as a representative of other Mullins' credit customers similarly situated, seeking redress for certain violations of the Act. Specifically, her complaint sets forth violations consisting of the following failures to disclose or reveal in Mullins' credit contracts with its customers since July 1, 1969: (1) the finance charge as an annual percentage rate, computed in accordance with 15 U.S.C. §§ 1605 and 1606 as required by 15 U.S.C. § 1638(a)(7); (2) the sum of all periodic payments or to denote that sum "total of payments," as required by 12 C.F.R. §§ 226.8(b)(3) and 226.8(c); (3) the information required by the Act and regulations issued thereunder in a clear manner, or to state all numerical amounts and percentages in at least 10-point type, .075-inch computer type, elite size typewritten numerals, or legible handwriting, as required by 15 U.S.C. § 1631(a) and 12 C.F.R. § 226.6(a); and (4) the language required by 12 C.F.R. § 226.8(b) and (c).[1]

The purpose of the Truth-in-Lending Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. It applies to both open-end credit plans and closed-end credit sales, such as those herein involved.[2] Section 1640 of the Act provides that any creditor who fails to disclose the required information "is liable to that person in an amount equal to the sum of (1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court."

Plaintiff alleges that Mullins is and has been a furniture seller and creditor within the meaning of the Act, and has since July 1, 1969 (the effective date of the Act) engaged in a large number of closed-end transactions (instalment credit sales) covered by the Act. She further claims that in all of these transactions from July 1, 1969 until the filing of the complaint on August 20, 1970 and

---

1. Sections 1605, 1606, 1631(a) and 1638 (a)(7) of the Act and the regulations of the Federal Reserve Board set forth in Sections 226.6(a), 226.8(b)(3), and 226.-8(b) and (c) of the Code of Federal Regulations require the disclosures described in the complaint.

2. Open-end credit sales present more difficult and complex problems for class actions than closed-end credit sales. See Ratner v. Chemical Bank New York Trust Company, 54 F.R.D. 412 (S.D.N.Y. 1972); Zachary v. Chase Manhattan Bank, N.A., 52 F.R.D. 532, S.D.N.Y., 1971; Wilcox v. Commerce Bank d/b/a BankAmericard, 55 F.R.D. 134 (D.Kansas, 1972); Shields v. First National Bank of Arizona, 56 F.R.D. 442 (D.Arizona, 1972); Goldman v. First National Bank of Chicago, 56 F.R.D. 587 (N.D. Ill., E.Div., 1972).

for an unstated period thereafter, Mullins used a printed sales and credit form to effectuate its sales which did not contain the required disclosures, and that she was one of the many customers who dealt with Mullins during that period and received from Mullins one of the illegal contract forms covering three sales of furniture to her in 1970. On behalf of herself and other purported members of the class who dealt with Mullins, plaintiff seeks damages for the above violations both under Section 130 of the Act, 15 U.S.C. § 1640, and under Section 414 of the New York Personal Property Law, together with costs and attorney's fees as authorized by the Act. She moves now under Rule 23 of the Federal Rules of Civil Procedure for an order permitting the action to proceed as a class action. Mullins opposes the motion and counter-moves to dismiss the complaint under Rule 12(b), F.R.Civ.P.

I

Mullins contends that Congressional intent to preclude class actions in all Truth-in-Lending cases is manifested by the Act's award of damages, coupled with a reasonable attorney's fee to the injured debtor, an incentive altogether sufficient to protect the small consumer.[3] Nothing we can discover in the Congressional history or the language of the Act justifies this conclusion. Clearly there is implicit in the purpose and language of the Act an intent to protect small claimants from excessive credit charges. The fact that the Act provides a minimal recovery of $100, a maximum of $1,000, and a reasonable attorney's fee, if successful, is not enough, in our opinion, to indicate an intent to prohibit class actions since the amount of the recovery does not provide a sufficient incentive to induce the prosecution of individual suits. See 1972 Federal Reserve Board Ann.Rep. To Congress: Truth-In-Lending 13; Eisen v. Carlisle & Jacquelin, 391 F.2d 555, at 566, and n. 18 (2d Cir. 1968); Escott v. Barchris Constr. Corp., 340 F. 2d 731, at 733 (2d Cir. 1965); Kalven and Rosenfield, The Contemporary Function of the Class Suit, 8 U.Chi.L. Rev. 684, 686 (1941); Dolgow v. Ander-

---

3. Class actions have not been permitted in the following reported cases: Ratner v. Chemical Bank New York Trust Company, *supra*; Buford v. American Finance Company, 333 F.Supp. 1243 (N.D. Ga., 1971); Rogers v. Coburn Finance Corp. of DeKalb, 54 F.R.D. 417 (N.D.Ga., 1972); Allerton v. Century Credit Corporation, 4 CCH Consumer Credit Guide ¶ 99,271 (S.D.Fla., April 12, 1971); Mourning v. Family Publications Service, Inc., 4 CCH Consumer Credit Guide ¶ 99,632 (S.D.Fla., November 27, 1970, rev'd on other grounds, 449 F.2d 235 (5th Cir. 1971), rev'd on other grounds 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318, 1973); Gerlach v. Allstate Insurance Company, 338 F.Supp. 642 (S.D.Fla., 1972); Shields v. Valley National Bank of Arizona, 56 F.R.D. 448 (D.Ariz., 1972); Shields v. First National Bank of Arizona, *supra*; Wilcox v. Commerce Bank d/b/a Bank-Americard, *supra*; Garza v. Chicago Health Clubs, Inc., 56 F.R.D. 548 (N.D. Ill., 1972); Goldman v. First National Bank of Chicago, *supra*; Kenney v. Landis Financial Group, Inc., 349 F.Supp.

939 (N.D.Iowa 1972); Kriger v. European Health Spa, Inc. of Milwaukee, Wisconsin, 56 F.R.D. 104 (E.D.Wis., 1972). Class actions have been permitted in the following reported cases: La Mar v. H & B Novelty & Loan Company d/b/a H & B Loan Company et al., 55 F.R.D. 22 (D. Ore., 1972); Smith v. International Magazine Service of Mid Atlantic, Inc., 4 CCH Consumer Credit Guide ¶ 99,249 (N.D.W.Va., October 29, 1971); Martin and Alexander v. Family Publications Service, Inc., 4 CCH Consumer Credit Guide ¶ 99,267 (D.Vt., June 30, 1970); Katz v. Carte Blanche, 53 F.R.D. 539 (W.D.Pa., 1971); Berkman v. Westinghouse Electric Corporation, 4 CCH Consumer Credit Guide ¶ 99,270 (N.D.Ill., June 25, 1971); Richardson v. Time Premium Company, 4 CCH Consumer Credit Guide ¶ 99,273 (S.D.Fla., February 4, 1971); Joseph v. Norman's Health Club, Inc., 336 F.Supp. 307 (E.D.Mo., 1971); Douglas v. Beneficial Finance Co. of Anchorage et al., 334 F.Supp. 1166 (D.Alaska, 1971), rev'd on other grounds, 469 F.2d 453 (9th Cir. 1972).

son, 43 F.R.D. 472, 485 (E.D.N.Y.1962); Katz v. Carte Blanche Corporation, 52 F.R.D. 510 (W.D.Pa.1971). Moreover, the computation of credit charges in an instalment contract is not easily understood by the ordinary consumer, and its complexity tends to discourage individual suits and suggests that his protection may best be accomplished by the class action technique. *Contra*, Ratner v. Chemical Bank New York Trust Company, 54 F.R.D. 412 (S.D.N.Y.1972).

■■ Mullins further argues that a class action is not maintainable under Rule 23 because there is no showing that the class is too numerous to permit joinder, or that there are questions of law or fact common to the class, or that plaintiff's claim is typical, or that she can adequately represent the class. Mullins claims additionally that a class action would be uneconomical, difficult to manage and in conflict with the basic purpose of Rule 23, citing as an example, Union Carbide & Carbon Corp. v. Nisley, 300 F.2d 561 (10th Cir. 1961), cert. denied, 371 U.S. 801, 83 S.Ct. 13, 9

L.Ed.2d 46 (1963). To proceed in a class action plaintiff must satisfy the four requirements of Rule 23(a) [4] and any one of the three subdivisions of Rule 23(b).[5] Prima facie, we conclude that the four requisites of Rule 23(a) have been met. The critical question, however, remains, i. e., under which, if any, category of Rule 23(b) is this action maintainable? Plaintiff urges that the action is maintainable under both subdivisions (b)(1) and (b)(3). Subdivision (b)(1) provides that the action is maintainable if subdivision (a) is satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which

4. Rule 23(a): "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

5. Rule 23(b):
"An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties

to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." As to subdivision (A), it is questionable whether it was meant as a vehicle for class actions asserting the kind of monetary liability here in issue.[6] Furthermore, we see no risk of the establishment of incompatible standards of conduct from inconsistent or varying adjudications of separate actions. The requirements of the Act are clear, and the forms of contract are standard. These contracts either did or did not comply with the requirements of the Act. Moreover, it is unlikely that further litigation will arise from the allegedly defective contracts because of the bar of the one-year statute of limitations imposed by Section 1640(e) and because defendant presently appears to comply with the requirements. Finally, as plaintiff herself recognizes, other potential claimants lack sufficient incentive to engage in litigation because of the small recovery involved. We, therefore, conclude that the risk of (b)(1)(A) is not here present.

■ Referring to (b)(1)(B), we again fail to comprehend how separate actions would dispose of the interests of other non-member parties to the adjudication involving these contracts, or impair their ability to protect their interests, except insofar as one may claim that they would be bound by the principle of *stare decisis*. This reason, however, not being uniquely relevant to a class suit as distinguished from many other actions, is not persuasive,[7] and accordingly the court rejects this classification.

■ Subdivision (b)(2) is obviously inapplicable. We come, therefore, to subdivision (b)(3). A class action is authorized under (b)(3) if:

"the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

It has been acknowledged by the Advisory Committee that class action treatment is not necessarily required in situations to which the subdivision relates, although it may nevertheless be convenient and desirable.[8] The guidelines un-

---

6. See Advisory Committee's Note to Rule 23, 39 F.R.D. 100 (1966). Ratner v. Chemical Bank New York Trust Company, 54 F.R.D. at 415, and n. 5; Note, Proposed Rule 23: Class Actions Reclassified, 51 Va.L.Rev. 629, 646–47 (1965); Travers & Landers, The Consumer Class Action, 18 Kan.L.Rev. 811, 823–24 (1970). Rule 23(b)(1)(A) refers to "incompatible standards of conduct for the party opposing the class." It does not seem intended to cover varying damage suits.

7. "It may not be irrelevant to recall that as a practical matter countless people are being bound every day a a result of *stare decisis* following lawsuits in which they did not participate." Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 46 (1967).

8. "*Subdivision (b)(3).* In the situations to which this subdivision relates, class-action treatment is not as clearly called for as in those described above, but it may nevertheless be convenient and desirable depending upon the particular facts." Advisory Committee's Note to Rule 23, *supra*, at 102.

der (b)(3) are imprecise and elastic. It is accordingly appropriate at this point to consider Mullins' objections to the use of (b)(3) for class action treatment. Mullins urges, among other things, that the common questions of law and fact in this case do not predominate over other questions affecting individual members of the purported class. The key issues to be decided are predominance of common questions and the superiority of the class action. Involved here are standard forms of credit contracts, which are to be compared with the wording of the Act. Prima facie, this comparison automatically presents questions of law and fact common to the class. Mullins claims that these common issues do not predominate over other issues affecting the individual members, and that there are other superior and available methods for the fair and efficient adjudication of the controversy. It argues that its contract forms changed at least in part between July 1, 1969 and August 20, 1970, and that, in addition, there were certain modifications in the law which would be applicable to different members of the class. Therefore Mullins maintains that plaintiff cannot adequately represent the class and individual or joinder actions are superior. Since the adoption of the amendments to Rule 23, the issue of adequate representation has become important because a judgment will include all parties who have not expressly requested exclusion. See Rule 23(c)(3). The fact that there are these potential differences in the contract forms and the legal modifications does not, however, render the class action improper.

■ Rule 23(b)(3) does not require that all members of the class be identically situated, and at this stage of the proceedings it is premature in view of the predominance of the common questions of law and fact, for the court to preclude the action from proceeding as a class action. See Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir.

1968), cert. denied, 395 U.S. 977, 89 S. Ct. 2131, 23 L.Ed.2d 766 (1969). The difference which may exist among the individual members of the class may, indeed, be very slight and, at best, will justify only a subdivision into separate classes rather than defeat the class action itself. Notice to members of the potential class under Rule 23(c) apparently will present no problem since the consumers are identifiable by the contracts. At all events, under the flexibility of Rule 23, the parties may, after completing their pretrial discovery proceedings, apply to the court for such relief as they may deem advisable, including an amendment of the court's order under Rule 23(c)(4). In the meantime, the court concludes that the plaintiff can adequately represent the class, see Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D.Cal.1967), that Mullins' objections to a class suit have not been sustained, and that therefore plaintiff has satisfied the prerequisites set forth in Rule 23(a) and 23(b)(3).

## II

■ Actions under the Act, according to Section 1640(e), must be brought "within one year from the date of the occurrence of the violation." Since the complaint was filed on August 20, 1970, all contracts entered into after August 20, 1969 fall within the requisite period of limitations. Plaintiff, however, seeks to extend the class to those entering into contracts with defendant from July 1, 1969 to August 20, 1969. Plaintiff argues that a creditor's obligation to a consumer to make the required disclosures occurs the moment the contract is entered into and continues as long as the contract is in effect. She further contends that this continuation of the failure to disclose results in a continuation of the consumer's injury until the termination of the contract. Defendant, on the other hand, asserts that any violation that may have "occurred" more than one year from the institution of

this action is barred by the above section. The construction of this section of the Act raises a critical question concerning the definition of the class. In construing the effect of the limitation prescribed in Section 1640(e), it is necessary to ascertain whether the failure to disclose under the Act is one violation occurring at the specific time of the first failure and not thereafter, or whether the failure to disclose is a violation which continues from the first failure until it is remedied or until the relationship of the parties terminates, during which period the defendant continues to receive unlawful benefits and inflicts harm upon the plaintiff. There is respectable authority in support of the continuing violation theory of the statute of limitations relating to certain types of wrongs. See Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968) (Sherman Anti-Trust Act violations); Baker v. F & F Investment, 420 F.2d 1191 (7th Cir. 1970), cert. denied, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed. 2d 49 (1970) (continual enforcement of an illegal contract in violation of civil rights); Katz v. National Labor Relations Board, 196 F.2d 411 (9th Cir. 1952) (violation of the National Labor Relations Act); Schokbeton Products Corp. v. Exposaic Industries, Inc., 308 F.Supp. 1366 (N.D.Ga.1969) (Clayton Act violation), and Baxter v. Curtis Industries, Inc., 201 F.Supp. 100 (N.D. Ohio, 1962) (copyright infringement).

In the present case there is no showing that defendant continually reaped illegal benefits, or that plaintiff continually sustained injuries during the entire period covered by the contract, resulting from the failure to make the required disclosures. One may speculate that had disclosures been made to the plaintiff during the term of the contract, she, being thus made aware of the various credit terms available for comparison, might have terminated her contract with the defendant and purchased elsewhere on better terms. But this is sheer speculation. Assuming she could show any damages resulting from the continuing nature of the failure to disclose, it is hardly likely that such damages would exceed twice the amount of the defendant's finance charges prescribed by Section 1640. The violation in this case occurred when, upon the execution of the contract, the defendant failed to make the required disclosures and not, it seems to us, at any time thereafter. There is nothing in either the letter or the spirit of the Act which imposes upon the creditor a continuing duty during the entire term of the contract to disclose what he has failed to disclose the first time the contract was executed. To reach a different conclusion would expand the class to those making the last instalment payment under the longest term sales contract entered into within one year after the filing of the complaint in August, 1970, and would thus increase the defendant's liability beyond what may be described as a harsh penalty unrelated to damages suffered.[9] The court concludes that without some Congressional intent to the contrary, it should not by construction increase the defendant's liability beyond the one year from the date of the execution of the contracts. Therefore the class will be tentatively defined as all consumers entering retail instalment contracts with defendant from August 20, 1969 to August 20, 1970.

III

Plaintiff's fourth, fifth and sixth causes of action are predicated upon the New York Retail Instalment Sales Act, § 402 of the New York Personal Property Law ("New York Act"). Subdivision 3(b)(1) of this section (effective July 1,

9. "The basic public problem is the heavy cost of credit to consumers." Hall v. Coburn Corporation of America, 26 N.Y. 2d 396, 403, 311 N.Y.S.2d 281, 285, 259 N.E.2d 720, 723 (1970).

1969) requires the seller in retail instalment contracts to disclose "All items required to be disclosed by the act of congress entitled 'Truth in Lending Act' and the regulations thereunder, as such act and regulations may from time to time be amended."

Section 414(2) of the New York Act states: "In case of failure by any person to comply with the provisions of this article, the buyer shall have the right to recover from such person an amount equal to the credit service charge or service charge imposed and the amount of any delinquency, collection, extension, deferral or refinance charge imposed."

■■■■■ These are state causes of action, pursuant to which plaintiff seeks additional damages under the pendent jurisdiction of this court. When the state and federal claims derive from a common nucleus of operative fact and the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional or federal case, the court clearly has pendent jurisdiction. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); 3A Moore's Federal Practice ¶ 18.07, at 81.[10] The facts underlying the federal action and those underlying the state action in this case are not merely related, they are identical and manifestly derive from a common nucleus of operative fact. There seems to be little doubt that the court has pendent jurisdiction over the state cause of action.

■■■■■ Defendant's objections to the joinder of the state cause are apparently addressed to the absence of authority on the part of the plaintiff to institute a Truth-in-Lending class action in the New York courts as decided in Hall v. Coburn Corporation of America, 26 N.Y.2d 396, 311 N.Y.S.2d 281, 259 N.E. 2d 720 (1970). The threshold question is whether a federal court is bound to apply state decisional law barring the application of a class action to a state truth-in-lending claim properly before the federal court. In its resolution we are confronted with the principles enunciated in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938),[11] on the one hand, and the application of Rule 23 on the other, which in turn calls into play the criteria enunciated in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).[12] If Hall v. Coburn, *supra*, barring class actions in state suits, involves a matter of substantive law, *Erie* and the Constitution would compel this court to follow it. If, to the contrary, the maintenance of a class action is to be treated as purely procedural, federal Rule 23 would be applicable. Under the circumstances of this case it could be said that a class action falls "within the uncertain area between substance and procedure," so that it may be classified as either. In *Hanna* the Supreme Court held that the federal

---

10. Discarding the "cause of action" test of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), the court said: ". . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." United Mine Workers of America v. Gibbs, 383 U.S. at 725, 86 S.Ct. at 1138.

11. The rule enunciated in *Erie* applies equally to pendent jurisdiction as to diversity jurisdiction. See *Mintz v. Allen*, 254 F.Supp. 1012 (S.D.N.Y.1966); 3 Moore's Federal Practice ¶ 0.305, at 3056, and Briskin v. Glickman, 267 F.Supp. 600 (S.D.N.Y.1967).

12. In *Hanna* the Supreme Court abandoned the "outcome-determinative" test of Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), noting that every procedural variation is "outcome determinative."

rule of process service provided in F.R. Civ.P. 4(d)(1) must prevail over a state statute providing that service upon an executor must be made by personal delivery, the court noting that:

" . . . When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." 380 U.S. at 471, 85 S.Ct. at 1144.

And again:

" . . . To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act." *Id.* at 473–74, 85 S. Ct. at 1145.

In a concurring opinion Mr. Justice Harlan laid down a more stringent *Erie* test requiring an inquiry "if the choice of rule would substantially affect those primary decisions respecting human conduct which our constitutional system leaves to state regulation. If so, Erie and the Constitution require that the state rule prevail, even in the face of a conflicting federal rule." Id. at 475, 85 S. Ct. at 1146. See Hart and Wechsler, The Federal Court and the Federal System 678 (1953).

The legal context of the federal and state Acts is the same. Under Hall v. Coburn, *supra,* only the method of enforcement in the state action differs. It is true that class action treatment enlarges the amount of the potential recovery against a defendant in a single action, and thus it could be contended that the choice of the federal rule infringed upon the substantive rights of a defendant. But such a conclusion would have to be predicated upon the premise that a delinquent defendant has a substantive right to be exempt from class actions or from the joinder in one action of similar claims, an assumption which we must reject.

The substantive law of the New York Act requires the same disclosures as the Federal Act. Enforcement of this State right by means of Federal Rule 23 does not affect any substantive defense a defendant might interpose to its enforcement.[13] We conclude that the rule enunciated in Hall v. Coburn, *supra,* is not one of those "primary decisions respecting human conduct," falling within the *Erie* criteria set forth by Mr. Justice Harlan in *Hanna.*[14] This conclusion is in accord with the principles set forth in Oskoian v. Canuel, 269 F.2d 311

---

13. The application of Rule 23 is simply a representative method of enforcing rights and privileges; it does not govern the nature and extent of information which must be disclosed by creditors in retail instalment contracts. Nor does Rule 23 (b)(3) bind as members of the class those who request to be excluded. See Rule 23(c)(2); and in this circuit notice is required in all class actions as a matter of due process. Eisen v. Carlisle & Jacquelin, *supra,* 391 F.2d at 564; Fowles v. American Export Lines, Inc., 300 F.Supp. 1293, 1295 (S.D.N.Y.1969).

14. Insofar as it is suggested that this court should refrain from exercising its pendent jurisdiction altogether in this case, and thereby avoid any collision with New York State law, we note that *Hall* presented a somewhat different factual pattern and the suit was instituted in the State courts before July 1, 1969, the effective date of both the Federal Act and the State amendment, and hence before there was any patent basis for pendent jurisdiction. Moreover, while a class action may not be authorized in State court for truth-in-lending cases, that court does permit joinder of claims in order to avoid the expense of proving separate claims.

(1st Cir. 1959), and Briskin v. Glickman, 267 F.Supp. 600 (S.D.N.Y.1967). It would be anomalous and emasculate the court's pendent jurisdiction over the state action if it were to permit a class action in the federal suit and deny it in the pendent state action. For the above reasons, we believe that the state claim must proceed as a class action.

### IV

■ Finally, we turn to defendant's motion to dismiss upon the ground that the complaint fails to state a claim upon which relief can be granted. Upon any such motion the court must take all well-pleaded allegations in the complaint as true and must deny the motion unless it appears that plaintiffs cannot possibly prove any facts in support of their claim. See Conley v. Gibson, 355 U.S. 41, 178 S.Ct. 99, 2 L.Ed.2d 80 (1957); Joseph v. Norman's Health Club, Inc., Morse v. Same, Yost v. Same, Greco v. Same, 336 F.Supp. 307 (E.D.Missouri, 1971). No such inability appears in the present complaint.

■ The grounds for the motion are two-fold. First, defendant argues that any compliance with the spirit of the Act by a meaningful disclosure of credit terms, is sufficient to avoid liability, notwithstanding "the mere omission of certain technical language." Congress did not, however, leave the implementation of meaningful disclosure to the creditor or the courts. Compliance with the specific provisions of the Act and the implementing Federal Reserve Board regulations is required. Since the complaint charges the defendant with specific violations of the Act, and the regulations, it states a claim for re-

lief. See In the Matter of Zale Corporation, 4 CCH Consumer Credit Guide ¶ 99,405 (Fed.Trade Comm.1971). Second, defendant contends that since the federal statute provides for more than twice the recovery permitted by the state statute, plaintiffs' damage award as contemplated by the state statute would be included within the recovery authorized by the federal statute. Consequently, the defendant argues that plaintiffs would, if successful, recover twice if damages were permitted under both statutes; from this defendant argues that the state claim should be dismissed as duplicative. This argument relates not to the viability of the respective federal and state claims, but only to the amount recoverable should plaintiffs ultimately obtain a judgment in their favor. Whatever merit there may be to this contention,[15] it is one that should not be prematurely determined upon a motion to dismiss.

Accordingly, defendant's motion to dismiss is denied, and preliminarily this action will proceed as a class action as indicated above. However, before arriving at a final conclusion, the parties should proceed with all pretrial discovery proceedings, and the court will hold immediately thereafter, upon notice from counsel, a hearing to consider (1) the number of claimants included in the class; (2) whether plaintiff, Helen Kristiansen, can fairly and adequately protect the interests of the class; (3) the form, content, and administration of the class notice to be used, and the manner of its dissemination; (4) who should bear the cost of the notice and its dissemination; and (5) other matters that may be raised by counsel.

It is so ordered.

15. It should be noted that since the State statute does not provide a floor or ceiling on the recovery, the amount recoverable under this statute may be less or greater than the amount recoverable under the Federal statute.