The CANADIAN ST. REGIS BAND OF MOHAWK INDIANS by Lawrence FRANCIS, Chief and Lloyd Benedict, Bruce Roundpoint, Joe Jacobs, John Oakes, Angus Bonaparte, Jr., David Benedict, Joyce Sharrow, Robert Sunday, William Sunday, and John Lazore, Council Members, St. Regis, Quebec, Canada, Hom Lao and Jerome Cook, Basil Cook, Cheryl Rourke, Patricia Phillips, et al., Plaintiffs,

v.

The STATE OF NEW YORK, Hugh L. Carey, as Governor, St. Lawrence County, Franklin County, Village of Massena, Town of Massena, Town of Bombay, Town and Village of Fort Covington, Farmers National Bank, Nationwide Mutual Insurance Co., Niagara Mohawk Power Co., Marine Midland Properties Corp., Walsh Realy Corp., Canadian National Railways, Defendants.

No. 82–CV–783.

United States District Court, N.D. New York.

March 8, 1983.

Vaughan N. Aldrich, Hogansburg, N.Y., Sonosky, Chambers, Sachse & Guido, Washington, D.C., for plaintiffs; Kenneth J. Guido, Jr., Harry R. Sachse, Washington, D.C., of counsel.

Robert Abrams, Atty. Gen., State of N.Y., Albany, N.Y., for State of N.Y.; Jeremiah Jochnowitz, Lew A. Millenbach, Asst. Attys. Gen., Albany, N.Y., of counsel.

Kernan & Kernan, Utica, N.Y., for Canadian Nat. Railways; John E. Hunt, Utica, N.Y., of counsel.

Hancock, Estabrook, Ryan, Shove & Hust, Syracuse, N.Y., for Marine Midland Properties, Inc.; Donald J. Kemple, Syracuse, N.Y., of counsel.

Hiscock, Lee, Rogers, Henley & Barclay, Syracuse, N.Y., for defendants Counties, Villages, Key Bank, Niagara Mohawk & Nationwide Ins.; Richard D. Davidson, Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION & ORDER

McCURN, District Judge.

The plaintiffs in this action seek a declaration of ownership of, and right to possess, approximately 12,000 acres of land in northern New York, plus damages for the approximately 130–170 years during which they have been out of possession. The suit is brought as a class action on behalf of all descendants of the Indians of the Village of St. Regis, against a defendant class comprised of those with an interest in the subject land. Presently before the Court is plaintiffs' motion to certify the defendant class, pursuant to Rule 23, Fed.R.Civ.P.

Plaintiffs' claim is that the land in question was reserved to the Indians of the Village of St. Regis in the Treaty with the Seven Nations of Canada, 7 Stat. 55 (1796), and is subject to a restraint against aliena-

tion under the Non-Intercourse Act. 25 U.S.C. § 177. It is alleged that New York State acquired possession of the protected land through a series of purchases which occurred during the period of 1816 to 1845, and that there had been no federal consent to these purchases. Plaintiffs therefore contend that title to the property never passed to the State; nor could it pass through subsequent purchases to the other defendants and members of the defendant class.

In the present motion, plaintiffs seek certification of a defendant class comprised of fourteen named defendants and "all other persons who assert an interest in any portion of the subject lands...." *Amended Complaint* ¶ 36. Plaintiffs narrow the class membership, however, by excluding from their land claim the following parcels:

a) those lands presently owned by or held in trust for descendants of the Indians of the village of St. Regis; b) those lands within the present boundaries of the American St. Regis Mohawk Indian Reservation; and c) those parcels occupied by the owner exclusively as a principal place of residence to the extent of up to two acres surrounding such residence.

*Amended Complaint* ¶ 24. It appears that, after these exclusions, there are approximately 810 owners of property in the claim area, and an unspecified number of those with non-ownership interests in the land.

Those named by plaintiffs as representatives of the defendant class are the State and Governor of New York, six counties and municipalities, five corporations and the Canadian National Railways, all of whom allegedly claim title to some portion of the subject land. These named defendants have responded variously to the certification motion. The State defendants, Marine Midland Properties Corp. and Walsh Realty Corp. oppose certification. Marine Midland and Walsh Realty also urge that, in the event a Class is to be certified, they should not be included as class representatives. By contrast, the remaining ten defendants—acting through common counsel—neither oppose class certification nor

their own inclusion as representatives. They do, however, urge the enlargement of the scope of the class, and modification of the notice requirement.

The issues raised by this motion are, for the most part, identical to those the Court confronted previously in *Oneida Indian of Wisconsin v. State of New York,* 85 F.R.D. 701 (1980) ("Oneida"), and *Cayuga Indian Nation v. Carey,* 89 F.R.D. 627 (1981) ("Cayuga"). The Court finds that, as in those previous cases, all the requirements for a defendant class action have been satisfied, and that certification under Rule 23(b)(1)(B) is warranted.

## REQUIREMENTS FOR A CLASS ACTION

■ As a preliminary matter, the Court finds that a class of persons asserting an interest in the subject land does actually exist, and that the proposed representatives are members of that class. Plaintiffs have also demonstrated to the Court's satisfaction that their action meets the four requirements of Rule 23(a). The first requirement, numerosity, is clearly satisfied by plaintiffs' unchallenged assertion that the defendant class would number at least 810 persons. *See Oneida,* 85 F.R.D. at 705; *Cayuga,* 89 F.R.D. at 630; *see also, Marcera v. Chinlund,* 595 F.2d 1231, 1238 (2d Cir. 1979); *vacated on other grounds, sub nom.; Lombard v. Marcera,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979).

The requirement that there be "questions of law or fact common to the class", Rule 23(a)(2), is also satisfied. Plaintiffs have identified three key issues which would arise in their claim against any defendant: (1) whether plaintiffs can establish ownership of the disputed land under the 1796 Treaty; (2) whether the land purchase after the 1796 Treaty were null and void under the Non-Intercourse Act; (3) if so, whether those transactions may be attacked at this time so as to give rise to a return of the land and/or an award of monetary damages to the descendants of the St. Regis Band. These questions probe the general liability of all those asserting an interest in the subject lands and are crucial to the survival of plaintiffs' action.

■ Defendant Marine Midland maintains that there will be non-common issues raised by this suit, relating to individual affirmative defenses and computation of damages, which make class certification inappropriate. Setting aside for the moment the significance of non-common defenses, which is the focus of Rule 23(a)(3), the Court acknowledges that, should plaintiffs prevail on the overall liability questions, there may be a need for a separate proceeding or proceedings for the assessment of damages. However, as the Second Circuit stated in *Marcera v. Chinlund, supra,* 595 F.2d at 1239,

> It is solidly established that a possible need for individualized relief should not deter a court from certifying a class at that stage of the proceedings when the court is engaged only in resolving the merits of plaintiffs' claim. . . . This principle is by no means limited to plaintiffs' classes.

*See also Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93, 98 (S.D.N.Y. 1981).

In both *Oneida* and *Cayuga,* the method used to insure that those common issues appropriate for class resolution predominated was to order that certification initially be limited to the purpose of litigating the general liability issues, leaving for subsequent adjudication, if any is necessary, issues relating to individual defenses and damages. *Oneida,* 85 F.R.D. at 705, 709; *Cayuga,* 89 F.R.D. at 630, 633. While no party in this action has requested that certification be limited to any specific issues, the Court nonetheless considers only the key liability questions, more fully described in the Order set forth below, as being appropriate for class resolution. Certification is limited accordingly, pursuant to Rule 23(c)(4)(A).

■ The next requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class". Rule 23(a)(3). The State contends that, since only it may assert a defense based on 11th Amendment immunity, and only the non-State defendants may

assert a defense based on the recording act, that the requirement of typicality of defenses is not satisfied. That precise argument was rejected by this Court in *Oneida,* 85 F.R.D. at 705, and is rejected here as well. The Rule does not command that the defenses of each class representative be co-extensive with those of every other class member; it only requires that a representative's defenses by typical of those of the class. The ability of the State to identify one non-typical defense it may have, or the non-State defendants may have, does not undermine their suitability as class representatives. *See, Dura-Bilt Corp. v. Chase Manhattan Corp., supra,* 89 F.R.D. at 99 n. 12 (S.D.N.Y.1981); Wright & Miller, *Federal Practice and Procedure:* § 1763, 1981 Pkt. Part at 192.

■ The final criterion of Rule 23(a) is whether "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4). The movant must here assure the Court that the proposed representatives' interests are sufficient to induce vigorous advocacy on their part; that their interests are not antagonistic to those of the class members; and that they have the means, including competent counsel, to pursue their cause. *Oneida* at 705; *see also, Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968).

The State defendants have a significant stake in the outcome of this suit, and may be expected to vigorously and competently defend the interests of the defendant class, as they have done and are doing in other Indian land claim actions. *E.g., Oneida, supra, Cayuga, supra.* Although at some point the State may be compelled to defend itself from cross-claims filed by other landowners who trace title to it, in this stage of the proceeding involving the merits of plaintiffs' claims the State's interests coincide with those of the class members, making it a formidable ally and adequate representative. *See Oneida,* 85 F.R.D. at 706.

The remaining named defendants do not appear to have any interests that are antagonistic to the class, but they vary among themselves in the extent to which they are willing or able to defend the suit.

**458**

The ten public and private defendants appearing through the firm of Hiscock, Lee, Rogers, Henley & Barclay, (the "ten defendants") are ready to proceed as representatives of the defendant class. The extent of both the interests they have at stake and the collective resources they have available insure that their representation will be adequate. Moreover, the Court notes that Richard D. Davidson, Esq., of the Hiscock firm is experienced in defending Indian land claims, and may be expected to competently protect the interests of the absent class members as well as those of his clients.

Defendants Walsh Realty Corp. and Marine Midland Properties Corp., however, ask to be excused as class representatives and argue that their very reluctance to represent the defendant class renders them inadequate under Rule 23(a)(4). Walsh Realty further asserts that it is financially unable to defend the interests of the class.

The Second Circuit has held that "Rule 23(a)(4) does not require a willing representative, only an adequate one." *Marcera v. Chinlund, supra,* 595 F.2d at 1239. Thus, the Court need not exclude these two parties merely on their expressions of reluctance. However, the burden is still upon the plaintiff to demonstrate that these reluctant defendants will in fact be adequate representatives, and plaintiff has hardly responded to the doubts raised about that adequacy here.

■ The Court finds that the exclusion of these defendants will not impair the adequacy of representation of the defendant class, and it notes that the excluded parties will, of course, be bound by any determination reached on the certified issues. It therefore excludes Walsh Realty Corp. and Marine Midland Properties Corp. as named defendants, in order to afford the defendant class members a representative body that is uniformly committed to promoting their interests. Thus, the final requirement of Rule 23(a) is satisfied.

Plaintiffs must also demonstrate that their actions falls within one of the categories of class actions set forth in Rule 23(b). In this case the Court finds, as it found in *Oneida* and *Cayuga* previously, that the action is maintainable as a defendant class action under Rule 23(b)(1)(B). That provision authorizes certification where:

> (1) The prosecution of separate actions by or against individual members of the class would create a risk of...
>
> > (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests....

The ten defendants agree that the nature of plaintiffs' claims bring the action within the rubric of Rule 23(b)(1)(B). Defendant Marine Midland, however, takes the position that Rule 23(b)(1)(B) can no longer accommodate a defendant class action because the doctrine of collateral estoppel is sufficient to protect the class members' interests. This defendant argues that under *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), members of a class can receive the benefit of prior determinations against the plaintiff—whether or not they were parties to those actions—by invoking collateral estoppel defensively.

■ The defendant's observation is accurate, but it misses an obvious and central point of Rule 23(b)(1)(B), which is to protect non-parties from the effects of determinations *adverse* to the individual class members who are in the action. It is true that non-party landowners would not be legally bound by a determination on liability favorable to the plaintiffs, and that *stare decisis* alone will not warrant certification under Rule 23(b)(1)(B). But it is equally clear, as this Court has previously stated, that, "adjudication favorable to the plaintiffs against the individual defendants on the liability issue would have a far greater impact than simply *stare decisis* consequences." *Oneida,* 85 F.R.D. at 706. The ten defendants aptly describe those consequences in their brief:

If the plaintiffs prevail on their claim against the present defendants, the value of all interests of land in the claim area will be effectively eliminated, including the interests of those landowners who are specifically excluded from the present lawsuit. . . .

*Memorandum of Law with Respect to Certification of a Defendant Class* by the ten defendants, at 5. The Court therefore finds Rule 23(b)(1)(B) to be the proper basis for certification of the defendant class.

 Marine Midland has raised four other objections to Rule 23(b)(1)(B) certification that may confidently be disposed of with some dispatch. They argue first that, because the United States would not be barred by a result in this action adverse to the plaintiffs, and could recommence the same suit in its capacity as trustee over tribal lands, *Mashpee Tribe v. New Seabury Corp.,* 427 F.Supp. 899 (D.Mass.1977), that class certification without joinder of the United States would be ineffectual and should be denied. Under *Mashpee,* such a scenario does seem possible, though in all likelihood it will not come to pass. But the possibility does not in any event undermine the appropriateness of class certification. Plaintiffs have commenced a suit which, if maintained only against the named defendants, could impair the ability of the nonparties to protect their interests. That satisfies Rule 23(b)(1)(B); there is no further requirement that resolution of the suit eliminate all possibility, however remote, of a subsequent suit by a differently situated plaintiff. Moreover, although the question is not before the Court now, it is arguable that the certification of a plaintiff class will remove the danger expressed by this defendant.

Marine Midland also attempts to analogize this case with nine other cases, loosely labeled "mass tort actions", in which the certification of plaintiff classes were denied for one reason or another. *See, e.g., McDonnell Douglas Corp. v. United States District Court,* 523 F.2d 1083 (9th Cir.1975); *Crasto v. Estate of Kaskel,* 63 F.R.D. 18 (S.D.N.Y.1974); *Kristiansen v. John Mullins*

*& Sons, Inc.,* 59 F.R.D. 99 (E.D.N.Y.1973). But none of the cases are sufficiently in point to illuminate the issues raised in this motion for certification of a defendant class in a land claim action; and each could be countered with the citation of some equally tangential case wherein certification was granted. Whatever light might be gleaned from the exercise would be inferior to the light from the direct precedents available involving the certification of defendant classes in Indian land claims.

Marine Midland next suggests that certification be denied because Rule 23 was not meant to accommodate suits political in nature. Although this and other courts have noted that a legislative solution to the problem of Indian land claims would be desirable, none, to our knowledge, have ever shied away from adjudicating such claims. Without prejudice to a full consideration of any defense based on the political question doctrine which may later be asserted in this case, the Court cites, for this class certification question only, a recent statement by the Court of Appeals of this circuit: "Indian land claims have traditionally been asserted in the courts of this county for resolution". *Oneida Indian Nation of New York v. State of New York,* 691 F.2d 1070 at 1081 (2d Cir.1982).

 Finally, Marine Midland offers a terse argument to the effect that defendant class certification would, in this instance, offend due process because of the extent to which the defendant class is exposed to damages. The Court acknowledges that a decision adverse to and binding upon the defendant class members would pose grave constitutional problems were it not accompanied by notice and opportunity to be heard. *See, Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). And as stated in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), that notice must be "reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. The defendant

has advanced no basis for concluding that notice cannot be fashioned in this case which would meet that standard, and thereby satisfy the requisites of due process. The constitutional challenge is premature, at best.

Having determined that certification of a defendant class under Rule 23(b)(1)(4) is appropriate, we turn now to the composition of that class.

## CLASS COMPOSITION

As stated previously, plaintiff seeks certification of a defendant class comprised of all persons asserting an interest in the subject lands, but they exclude from their claim lands in which individual Indians have an interest, land within the American St. Regis Mohawk Reservation, and residential parcels of up to two acres occupied by the owner. The ten defendants contest the first and third of these exclusions. It is their contention that the exclusions are sought solely for the convenience of the plaintiffs, that the excluded landowners have interests adverse to the plaintiffs, and that a determination of this suit against the class defined by the plaintiffs will, despite the absence of these excluded persons, impair their ability to protect their interests.

The descendants of the Village of St. Regis who derive their title or interest in land within the claim area from the disputed transactions with New York State clearly have an interest that is adverse to those of the plaintiffs. An adjudication of this action without their participation could impair their ability to protect that interest just as it would impair the ability of their non-Indian neighbors to protect their interest. Despite this circumstance, the Court in Oneida permitted the plaintiffs to exclude individual Indian landowners from the defendant class, primarily because the elimination of Indian and other proposed exclusions would have inflated the size of the class by 1,000%, making the cost of notice to the class prohibitively expensive. 85 F.R.D. at 706–08. In *Cayuga,* however, the Court found no such barrier to the inclusion, and aligned the individual Indian landowners with the defendant class. 89 F.R.D. at 632.

In this case, inclusion of the individual Indians with an interest in the claim area would result in only a slight increase in the size of the defendant class. The Court finds that this enlargement is not sufficiently detrimental to plaintiffs' practical ability to assert its claims to warrant the unnatural exclusion of individual Indians from the defendant class.

There is a similar problem with respect to the exclusion of small residential landowners, for they too may be adversely affected by an unfavorable adjudication on the merits rendered in a suit without their participation. Defendants suggest that subsequent suits against small landowners will be forthcoming, and they emphasize that the plaintiffs have expressly reserved their rights against owners of the now-excluded parcels. In defendants' view, the interests of fairness and judicial economy warrant the inclusion of these persons in the present action.

The Court has fully reconsidered the arguments of the defendants for inclusion, which arguments were advanced previously in *Oneida,* and has determined to adhere to our view in that prior case: the exclusion of small owner-residents should be permitted. As in *Oneida,* inclusion of those landowners, estimated at 1,300–1,500 in number, would inflate the defendant class beyond the level at which plaintiffs could be expected to maintain their action, with the inevitable result of individualized actions. This would disserve the interests of efficient judicial resolution of the dispute, without relieving any landowner of the present cloud upon their title. *Oneida,* 85 F.R.D. at 707–708.

Moreover, the Court remains unconvinced that inclusion is truly in the interests of those small landowners. While it is clear that a determination in favor of the plaintiffs will impair the interests of landowners both inside and outside the certified class, it is also clear that those who are not members would at least escape the immediate judgment resulting from the adjudication. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Those with the possibility of exclusion, therefore,

might reasonably desire it. Of course, should any excluded persons wish to join the action, the option of intervention will remain available to them. This option, coupled with notice that may be expected to reach virtually all landowners within this relatively modest-sized claim area, is sufficient to protect the interests of those excluded.

The Court therefore holds that Indian landowners, not otherwise excludable, are to be included in the defendant class, while residential owner-occupants of parcels up to two acres are not included in the defendant class.

Defendants also argue that the class be defined so as to specifically include mortgagees and lienholders, and that notice be sent to all such derivative interests. In *Cayuga,* the Court acknowledged that "this litigation will doubtless affect such derivative interests", but nevertheless declined to explicitly include them in the defendant class or require individual notice to be sent to them. 89 F.R.D. at 632. It appears that some reconsideration and elaboration of the issue is needed to avoid confusion in this case.

While the owners of property in the claim area have the most direct interest in defending this suit, it is undeniable that a wide range of persons and institutions with derivative interests have much at stake as well. Indeed, unlike the small landowners who are to be excluded from the defendant class, persons such as lienholders and mortgagees have an interest in the very parcels that are the subject of this action. A decision for the plaintiffs rendered in their absence may completely alter the nature of their interest despite the lack of any *in personam* judgment. Without opining as to whether due process requires their inclusion in the defendant class, *see, Hansberry v. Lee, supra,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940), it is the Court's view that those with derivative interests in the subject land will be sufficiently affected by any judgment to warrant their inclusion in the defendant class, thereby subjecting them to whatever *in personam* judgment

results. Indeed, both parties agree that their inclusion is proper; the disagreement lies in the form of notice required for such interests.

NOTICE

To comport with due process, notice must be fashioned which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). There is also an important interest in settling disputes, and *Mullane* recognizes that "(a) construction of the Due Process Clause which would place impossible or impractical obstacles in the way would not be justified." *Id.* at 313–14, 70 S.Ct. at 657.

While a class action brought under Rule 23(b)(3) is subject to the specific, and strict, notice requirements of Rule 23(c)(2), which may necessitate individual notice to all class members who can be identified, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), in class actions under Rule 23(b)(1)(B), such as this one, the more flexible notice provisions of Rule 23(d)(2) apply. Such notice, however, must still satisfy the *Mullane* standard.

In this case, the Court believes that individual notice to the owners of the subject lands, coupled with publication notice will satisfy the due process right to notice of all those with an interest in the subject lands, including those with derivative interests. A combination of factors makes such notice "reasonably calculated . . . to apprise interested parties of the pendency of the action." *Mullane, supra,* 339 U.S. at 314, 70 S.Ct. at 657.

First, individualized notice to landowners will be apt to reach many of the individuals or institutions with derivative interests as well as title ownership. Second, individually notified landowners may be expected in many cases to convey their notice to those with derivative interests in their property, either formally—by virtue of their security agreements—or informally. Third, because

of the relatively small size of the claim area and the large amount of publicity surrounding this lawsuit, at least some of those with derivative interests may be expected to inquire of the title holder about the status of their interest in view of the suit. Fourth, there is publication notice which, though not particularly effective in the ordinary case, should in this case generate enough interest and attention to be exceptionally effective in reaching interested persons not otherwise notified.

As in *Mullane,* this notice cannot be expected to reach all those interested persons. However, it is reasonably certain to reach most, and as the Court reasoned,

> ... notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all, since any objections sustained would inure to the benefit of all. We think that under such circumstances reasonable risks that notice might not actually reach every beneficiary are justifiable.

*Id.* 339 U.S. at 319, 70 S.Ct. at 659–60.

Accordingly, the defendant class shall include all those with an interest in any portion of the subject land (with the exclusion of small landowners discussed previously), but individual notice need only be sent to owners of the subject land.

Turning finally to the unsettled specifics of the form of notice, the Court finds that individual notice to landowners need only be sent by first class mail. *Oneida* at 709; *Cayuga* at 633. The burden and expense of certified mailing to the 810 plus members of the class outweighs the speculative advantage it will have in gaining the attention of class members. Moreover, it may be expected that, due to the drastic nature of the claim and the relatively small area affected, notice by regular mail and publication will be amplified by public and private communication among those landowners. That, of course, would not be a substitute for notice, but should effectively impress upon such persons the seriousness of the individualized notice they will receive.

Accordingly, it is hereby

ORDERED, that:

(1) This action is certified as a class action pursuant to Fed.R.Civ. 23(b)(1)(B) against defendants: The Governor and the State of New York, represented by the Attorney General and his delegates; the defendants St. Lawrence County, Franklin County, Village of Massena, Town of Massena, Town of Bombay, Town and Village of Fort Covington, Key Bank of Northern New York, the Nationwide Mutual Insurance Company, Niagara Mohawk Power Corporation and Canadian National Railways, represented by Richard D. Davidson, Esq., of the firm of Hiscock, Lee, Rogers & Barclay of Syracuse, New York, individually and on behalf of all other persons who claim an interest in any portion of the subject land as described in paragraphs 24–27 of plaintiffs' complaint as shown on the map annexed thereto, with the exception of (a) those lands within the present boundaries of the American St. Regis Mohawk Indian Reservation; and (b) those parcels occupied as a principal place of residence to the extent of two acres surrounding said residence.

(2) This action is dismissed pursuant to Rule 41(a) of the Fed.R.Civ.P. with respect to all named defendants other than the above designated class representatives; provided, that such other named defendants shall be fully bound, as members of the defendant class, as to all issues concluded by the judgment, in this class action.

(3) No further pleadings or other papers need be filed by or served upon any named defendant as to whom this action has been dismissed.

(4) Nothing in this Order shall prejudice the right of any party to file any counter claim, cross claim, motion to join additional parties, or third-party complaint against any other person or party pursuant to the Federal Rules of Civil Procedure.

(5) The plaintiffs and all members of the defendant class are enjoined during the pendency of this action from instituting or proceeding with any action in any other court to determine the issues of title or right to the subject land as between the

plaintiffs and any of the defendants, to be decided by this class action; provided, that this Order shall not affect the right of any member of the defendant class to obtain a determination in any forum of such defendant's rights as against any other member of the defendant class or as against any non-party.

(6) This action shall proceed immediately as a class action pursuant to the terms of this Order, pending and subject to any modification of the terms of the Order pursuant to any objection or request to appear or intervene by any member of the defendant class.

(7) Subject to further Orders of this Court the class of defendants is certified solely for the purpose of determining the issues as to whether the transactions between the Indians of the Village of St. Regis and the State of New York between 1816 and 1845, as more fully described in the complaint, may now be upset or attacked at this time in such a manner as to give rise to a return of the land or an award of monetary damages to the descendants of said Indians, and those procedural and substantive issues which relate to plaintiffs' status, standing, or ability to bring this action.

(8) Commencing within twenty (20) days of entry of this Order, plaintiffs shall cause to be published three times, once each in three consecutive weeks, in at least one newspaper of general circulation published in each of the two counties named in the complaint and in the New York Times newspaper and shall cause to be posted in a conspicuous place in each county in the offices where deeds are recorded, and within ninety (90) days shall cause to be mailed by first class regular mail, to members of the defendant class listed upon the most current published rolls of persons assessed as owners of real estate in the area included within the map annexed as Exhibit A to the complaint, a copy of Exhibit A and the following form of Notice bearing the caption of this action:

TO ALL PERSONS WHOM IT MAY CONCERN: Take notice that the above-entitled action has been certified by the Court as a defendant class action against all persons who claim an interest in any portion of the real estate described below with the exception of those persons who occupy portion of the land as a principal place of residence to the extent of two acres surrounding such residence.

Plaintiff Canadian St. Regis Band of Mohawk Indians, and the individual plaintiffs, as representatives of a proposed plaintiff class, ask the Court to declare that they have the right to receive possession and the fair rental value of such real estate. Plaintiffs' claim is based on the alleged invalidity of seven transactions entered into between the Indians of the Village of St. Regis and the State of New York between 1816 and 1845, whereby the land in question was transferred to the State of New York. The plaintiffs assert that these transactions were not carried out in accordance with federal law, and that because the members of the defendant class all trace their title or derive their interest from the challenged transactions, their title and interest are void.

The class of defendants is certified solely for the purpose of determining the issues as to whether the transactions between the Indians of the Village of St. Regis and the State of New York between 1816 and 1845, as more fully described in the complaint, may be upset or attacked at this time in such a manner as to give rise to a return of the land or an award of monetary damages to the successors of said Indians, and those procedural and substantive issues which relate to the plaintiffs' status, standing, or ability to bring this action.

The designated class representatives are the Governor and the State of New York, represented by Attorney General and his delegate Lew A. Millenbach, Assistant Attorney General, State of New York, 12224 (telephone 518–474–6639); and St. Lawrence County, Franklin County, Village of Massena, Town of Bombay, Town and Village of Fort Covington, Key Bank

of Northern New York, N.A., the Nation-wide Insurance Company, Niagara Mohawk Power Corporation and Canadian National Railways, represented by Richard D. Davidson, Esq., of the firm of Hiscock, Lee, Rogers, Henley & Barclay, One Financial Plaza, P.O. Box 4878, Syracuse, New York 13221 (telephone 315–422–2131).

Plaintiffs are represented by Kenneth J. Guido, Jr., and Harry R. Sachse, Esqs., of the firm of Sonosky, Chambers, Sachse & Guido, 1050 31st Street, N.W., Washington, D.C. 20007 (telephone 202–342–9131).

ANY PERSON WHO IS A MEMBER OF THE DEFENDANT CLASS AS ABOVE DESCRIBED AND WHO WISHES TO OBJECT TO THE CERTIFICATION OF THIS ACTION AS A CLASS ACTION, OR WHO WISHES TO OBJECT TO THE ADEQUACY OF THE REPRESENTATION OF THE CLASS OR TO APPEAR INDIVIDUALLY IN SAID ACTION FOR ANY PURPOSE, MUST, ON OR BEFORE JUNE 1, 1983, FILE A MOTION BEFORE THE COURT AT SYRACUSE, NEW YORK, CONTAINING SUCH OBJECTION OR REQUEST TO APPEAR, AND THE REASONS THEREFOR, OR SUCH OBJECTION OR REQUEST SHALL BE DEEMED WAIVED. COPIES OF ANY SUCH MOTION MUST ALSO BE SERVED UPON COUNSEL FOR THE PLAINTIFFS AND BOTH COUNSEL FOR THE REPRESENTATIVE DEFENDANTS.

The said real estate is described generally as follows:

(1) All that land in the county of St. Lawrence included in that tract of land described as follows: Beginning at a point on the right side of Beach Street approximately 200 feet southeasterly of the intersection of Pleasant Street and Beach Street and identified more precisely by the state grant survey of the Haskell Mile Square dated July 31, 1824, and continuing from there N 58° 20′ 28″ E a distance of 5171.43 feet; from there S 31° 41′ 41″ E a distance of 5362.50 feet; from there S 57° 51′ 20″ N a distance of 5280 feet; from there N 33° 41′ 53″ W a distance of 3809.10 feet; from there N 31° 39′ 32″ W 1600.57 feet; from there N 58° 20′ 28″ E a distance of 240.57 feet to the place of beginning; which tract is known as the Haskell mile square, or the mile square at Massena.

(2) All that land in the county of St. Lawrenced encompassed in the meadows along both sides of the Grass River from the aforementioned mile square to the confluence of the Grass River and the St. Lawrence Rivers.

(3) All that land in the county of Franklin included in the tract of land bounded on the South by a line beginning at the point where the center of the St. Regis River intersects the Franklin-St. Lawrence County line and extending in an easterly direction from that point along the Franklin-St. Lawrence County line and an extension of that line to the point where said line intersects the southern boundary of the American St. Regis Mohawk Indian Reservation; and on the east, north and west by the southern boundary of the St. Regis Indian Reservation; which tract is commonly known as the Hogansburg triangle.

(4) All that land in the county of Franklin included in the tract of land bounded as follows: beginning at the south-eastern corner of the American St. Regis Mohawk Indian Reservation and extending in a direction S 84° E to a point 11 miles, 1,030 feet from the southwestern corner of said reservation, which is approximately four miles from the southeastern corner of said reservation; from there in a direction N 6° E to the southern boundary of what was the Village of Fort Covington (before it was merged with the Town of Fort Covington); from there easterly along the boundary of said Village to the southeastern corner of said Village; from there northerly along the eastern boundary of said Village and an extension thereof to the Canadian Border; from there wester-

ly along the Canadian border to the eastern boundary of the American St. Regis Mohawk Reservation; and from there southerly along the eastern boundary of such reservation to the point of beginning.

These tracts of land are more generally depicted on the map attached as Exhibit A to the complaint in this case. A copy of that exhibit is attached to this notice. They include within their boundaries portions of the Town of Massena and the Village of Massena in St. Lawrence County and the Towns of Bombay and the Town of Fort Covington in Franklin County.

The notice in the New York Times only may omit a reproduction of Exhibit A and the following notice language: "A copy of that exhibit is attached to this notice."

Plaintiffs shall certify to the Court the names of the persons to whom such notice is mailed, the date of such notice, the name of newspapers in which such notice has been posted, and the dates of posting. The envelopes forwarding the above notice by mailing shall have the following recital affixed in large capital letters:

ATTENTION: THE ENCLOSED NOTIFICATION CONCERNS YOUR LEGAL RIGHT TO YOUR PROPERTY. IT SHOULD BE READ CAREFULLY.

(9) That pending receipt of responses to the notice called for in section (8) hereof, it would be generally undesirable to require responsive pleadings to the complaint, and it is accordingly further Ordered that the time within which the representative defendants must move, answer or otherwise plead to the complaint or bring cross or third-party actions is hereby extended until further Order of this Court.

(10) Any request for consideration of the question of class certification of a plaintiff class shall await final resolution of any motions objecting to defendant class certification or representation, and the Court will establish an equitable schedule for such plaintiff class consideration by further Order of this Court.

IT IS SO ORDERED.